STATE of Missouri ex rel. DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, et al, Appellant,

v.

**Larry Don STONE, Respondent.**

No. WD 58993.

Missouri Court of Appeals, Western District.

Feb. 26, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 2002.

Kerry G. Rowden, Esq., Tuscumbia, for Respondent.

Christopher Michael Rohrer, Camdenton, for Appellant.

Before HARDWICK, P.J., TURNAGE, Sr. J., and MORAN, Sr. J.

LISA WHITE HARDWICK, Judge.

The Missouri Department of Social Services Division of Child Support Enforcement appeals the trial court's order setting aside a default judgment of paternity and child support entered against Larry Don Stone. We reverse and remand for reinstatement of the default judgment.

### Facts

On December 22, 1996, the Missouri Department of Social Services Division of Child Support Enforcement (DCSE) filed a paternity suit against Larry Don Stone in the Circuit Court of Miller County, Missouri. The suit was filed on behalf of Kayla McCreery, a minor child, and her mother, Susan McCreery. On August 22, 1996, the clerk of Miller County issued a summons for personal service on Stone in

Miller County. The summons was returned non-est, indicating that Stone no longer resided in Miller County. On August 5, 1997, the clerk issued an alias summons for personal service on Stone in Cole County. On August 6, 1997, Deputy Eric Payne returned the summons, indicating it was personally served on Stone at 13105 Jefferson in Russellville, Missouri, in Cole County.

Stone did not file responsive pleadings or enter his appearance in the paternity action. On September 17, 1997, DCSE filed a motion for default judgment. The court heard evidence on the motion and concluded that Stone was Kayla's biological father. By default judgment entered October 21, 1997, Stone was ordered to pay child support for Kayla in the amount of $204.00 per month and a lump sum amount of $5,712.00 to reimburse the State of Missouri for funds paid to the child's mother.

On May 9, 2000, more than two-and-half years later, Stone filed a motion to set aside the default judgment. He claimed the trial court did not have personal jurisdiction to enter the default judgment because he never received service of process. Stone alleged he was unaware of any paternity proceedings in Miller County until he was picked up on an outstanding warrant for failure to pay child support.

On July 18, 2000, the court held a hearing on the motion to set aside. Stone testified at the hearing that he never resided at 13105 Jefferson in Russellville, Missouri, where the summons was served. He said he resided in Sunrise Beach, Missouri, in Morgan County, during the period of February 1977 through October 1997. Stoned denied he was ever served with process by Deputy Payne.

Members of Stone's family testified on his behalf at the hearing. His mother, Judy Stone, said Stone lived in Sunrise Beach as of May 1997, but might have "moved to another place" thereafter. Stone's brother and sister-in-law, James and Elizabeth Stone, testified that they lived at the Russellville, Missouri, address where the summons was allegedly served. Elizabeth testified that Stone did not reside at their home, but he visited and may have stayed overnight once or twice in 1997. James testified that Elizabeth's brother, Bruce McMillin—whom he described as a "drug addict ... diagnosed as paranoid schizophrenic and bipolar"—lived with them at the Russellville address from April 1997 through December 1997. During closing arguments, Stone's counsel suggested McMillin "may well have accepted service on behalf of Mr. Stone."

Deputy Eric Payne, who served the summons in August 1997, also testified at the motion hearing. He served process on approximately "16,000 papers" in 1997 and did not specifically recall serving Stone. Deputy Payne wrote on the return that he served it on "Larry Don Stone in person." He testified that he "wouldn't have marked it that way if [he] had not done it."

At the close of the evidence and argument, the trial judge granted the motion to set aside the default judgment and made the following comments:

Let the Court say my judgment may be colored somewhat by the fact that we have just had arise within the last week in this county a situation where an officer served papers on an individual who identified himself as the defendant. And it so happened that the officer had the occasion to arrest, the next week, the so-called defendant, and he says, gee, you're not the guy I served that said he was you.

So the Court is aware that people do sometimes claim to be who they are not even if they're about to be served pa-

pers. What the motivation is the Court can only speculate. Possibly it's they think they're better off to announce that they are someone they're not rather than to have to tell the law enforcement officer who they are. I don't know. I can only guess. But this officer could not identify Mr. Stone as the person he served, nor could he identify Mr. McMillin, I believe it was, as the person he served.

And I realize that's something that may be impossible to do, but I think that the—I think this is more and more a problem that law enforcement is going to have to address and attempt to do a better job of identifying the people they are serving. I see it as a flawed procedure at present.

And to some degree, I suppose that—I mean, I recognize your argument, Mr. Rohrer, that this Respondent does have motive to be untruthful to the Court, but I think if there's any question, I think it better to err on the side of fairness. And the Court believes that this Respondent should have his hearing if that's what he wants.

DCSE appeals the trial court's order setting aside the default judgment.

## Point on Appeal

■ DCSE's sole point on appeal is that the trial court erred in setting aside the default judgment because Stone failed to present clear and convincing evidence that he was not personally served. We review the court's ruling for an abuse of discretion. *Brants v. Foster*, 926 S.W.2d 534, 535 (Mo.App. W.D.1996). A trial court does not abuse its discretion in setting aside a default judgment unless its ruling was clearly against the logic of the

circumstances and was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Gering v. Walcott*, 975 S.W.2d 496, 499–500 (Mo.App. W.D.1998).

■ Pursuant to Rule 54.22,[1] a "return of service" is considered prima facie evidence of personal service upon a party. The return creates a presumption of proper service that can be impeached only by clear and convincing evidence that a party was not served. *State ex rel. D.F.S. v. Sutherland*, 916 S.W.2d 818, 820 (Mo.App. W.D.1995). The clear and convincing standard refers to evidence that instantly tilts the scales in the affirmative when weighed against the opposing evidence, leaving the fact finder with an abiding conviction that the evidence is true. *State ex rel. Hobbs v. Tuckness*, 949 S.W.2d 651, 656 (Mo.App. W.D.1997).

■ At the hearing on the motion to set aside default judgment, the court took judicial notice of summons return showing personal service on Stone. Deputy Payne, the process server, noted on the return that he delivered the summons to "Larry Don Stone in person." Deputy Payne testified he would not have marked the return to show service on Stone if he had not actually served Stone. The return of service gave rise to a presumption of proper service, which could be overcome only with clear and convincing evidence to the contrary.

Stone testified that he did not live at the service address in Russellville, Missouri. He denied ever being served with any papers by Deputy Payne. Stone testified that he lived in Sunrise Beach, Missouri, in August 1997, but was unable to present any written evidence of his residency.[2]

---

1. All rule citations are to the Missouri Rules of Civil Procedure (2001).

2. The court sustained DCSE's hearsay objections to rental receipts Stone's counsel attempted to introduce into evidence. The re-

His mother, Judy Stone, thought Stone moved out of Sunrise Beach after his father's death in May 1997. She was unaware of where Stone lived at the time of service in August 1997. Stone's brother and sister-in-law confirmed he never lived with them at the Russellville service address, although he visited their home and stayed overnight once or twice in 1997. Stone's counsel argued that Bruce McMillin, a drug addicted and mentally ill relative who also lived in the Russellville home in 1997, might have accepted the service intended for Stone. This theory was wholly conjectural, as McMillin was not called to testify and none of the other witnesses testified to having any knowledge about McMillin's acceptance of service.

Stone's denial of service was the only evidence directly rebutting the return of service. The testimony by Stone's relatives is inconclusive as to whether he could have been served in Russellville, and his counsel's speculative theory (of McMillan accepting service) does not tip the evidentiary scales in Stone's favor. Previously, Stone could not be served at an address listed for him in Miller County, and at the motion hearing he claimed service was improper in Russellville (Cole County) because he lived in Sunrise Beach (Morgan County). Stone failed to present any evidence corroborating his residence in Sunrise Beach at the time of service in August 1997.

In determining whether Stone's denial of service constituted clear and convincing evidence of improper service, we must defer to the trial court's evaluation of Stone's credibility. However, comments made by the trial judge—after setting aside the default judgment—indicate the ruling was improperly influenced by factors other than Stone's testimony. The judge acknowledged on the record that his "judgment may have been colored" by the fact that he had a similar case the prior week involving testimony from "an officer [who] served papers on an individual who identified himself as the defendant." Based on that experience, the judge referred to the current protocol of return service as a "flawed procedure" and stated that "law enforcement is going to have to address and attempt to do a better job of identifying the people they are trying to serve."

The comments strongly suggest the court considered facts outside the record in rendering its decision. The court was persuaded to set aside the default judgment not based on Stone's denial of service, but because of the trial judge's recent experience with and tainted view of the mandated service procedures. The comments further indicate the court found dispositive the argument of Stone's counsel that McMillan identified himself as Stone and accepted service at the Russellville address. This theory was unsupported by the testimony and did not provide clear and convincing evidence of improper service.

The decision is reversed, as the trial court abused its discretion in setting aside the default judgment. The case is remanded with instructions to reinstate the default judgment.

All concur.

---

ceipts did not show a residence address, and Stone failed to present his landlord to verify

the receipts.