Robin McELROY, Respondent,

v.

EAGLE STAR GROUP,
INC., Appellant.

No. WD 63862.

Missouri Court of Appeals,
Western District.

Jan. 25, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 2005.

William J. Gotfredson, Kansas City, MO, for appellant.

Steven C. Effertz, Independence, MO, for respondent.

Before RONALD R. HOLLIGER, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant, Eagle Star Group, Inc. ("Eagle Star"), appeals the denial of its motion to set aside a default judgment entered by the Circuit Court of Jackson County in favor of respondent, Robin McElroy, in her personal injury action against Eagle Star. In its sole point on appeal, Eagle Star claims the motion should have been granted pursuant to Rule 74.05(d) [1] since it stated facts establishing a meritorious defense to McElroy's lawsuit and also showed good cause for setting aside the default judgment. Finding a lack of good cause shown, we affirm.

McElroy's attorney first notified Eagle Star of McElroy's personal injury claim in a letter dated March 17, 2003, which was sent to and received by Eagle Star's registered agent, Michael Jaax. In this letter, counsel for McElroy described the nature and cause of McElroy's injuries, requested that Jaax notify Stone Oak's liability insurer of McElroy's claim, and asked that either Jaax or Stone Oak's liability insurer acknowledge her claim within fifteen days. Counsel for McElroy never received a response of any kind from Jaax or a liability insurer for Stone Oak.

McElroy filed her petition against Eagle Star on September 19, 2003, and Jaax was served on October 8, 2003. The petition alleged that McElroy was a resident of Stone Oak Apartments ("Stone Oak"), an apartment complex located at 3151 Jennings Road in Independence, Jackson County, Missouri, and that Eagle Star was "the owner and operator" of Stone Oak. According to the petition, on or about November 15, 2002, McElroy was injured when a glass globe which was located on a light fixture in her apartment fell off the fixture, striking her on the left wrist. The petition further alleged that an Eagle Star "maintenance employee" had previously changed a light bulb in that fixture but had negligently failed to secure the glass globe covering the fixture, which fell out of the fixture and struck McElroy when she subsequently attempted to replace the light bulb that had been placed there by Eagle Star's employee. The petition alleged three separate acts of negligence on the part of Stone Oak, "one or more of" which caused or contributed to cause McElroy's injuries: (1) that Stone Oak "failed to properly maintain the light fixture, to ensure that plaintiff could safely remove and replace a light bulb"; (2) that Stone Oak, "by its employee, improperly installed the lens to the light fixture so as to allow the lens to be insecure and fall on plaintiff as she attempted to change a light bulb"; and (3) that Stone Oak "allowed the light fixture to be placed in a location so that the fixture was dangerous to persons who might change the light bulb in said fixture, including plaintiff." Finally, the petition alleged that as a direct and proximate cause of Eagle Star's negligence, McElroy sustained: physical injury to her left arm and hand, including a lacerated tendon which required surgical repair; pain and suffering; permanent and progressive disability; past and future medical expenses; and past and future wage losses.

Eagle Star failed to file an answer to McElroy's petition within thirty days of personal service of process on its registered agent, as required by Rule 55.25(a). As a result, on November 20, 2003 (which was a little less than two weeks after Eagle Star was required to have filed its answer), McElroy filed a motion requesting the entry of an interlocutory order of default under Rule 74.05(b), a copy of which was also served on Jaax by counsel for McElroy. The trial court entered an interlocutory order of default on

1. All rule references are to Missouri Court Rules (2003).

November 25, 2003, and set an evidentiary hearing for December 18, 2003. The following day (November 26, 2003), McElroy's counsel sent to Jaax, via certified mail with return receipt requested,[2] a letter enclosing a copy of the interlocutory order of default, which stated that such an order had been entered against Eagle Star and that an evidentiary hearing had been scheduled for December 18, 2003. This letter, which noted that counsel had previously attempted to contact Jaax by phone to discuss the case, but had never heard back from him, also invited Jaax to call counsel should he wish to discuss the matter prior to the scheduled hearing.[3] Counsel for McElroy received no written or telephonic response to the letter.

At the December 18, 2003 evidentiary hearing, which was not attended by counsel for or a corporate representative of Eagle Star, McElroy presented evidence that her medical expenses from the accident totaled $33,931.33, that she would incur over $65,000.00 in future medical expenses, including additional surgery on her left hand, and that she was permanently and progressively disabled due to her injuries. McElroy also presented evidence that she had already lost some $27,040.00 in wages due to the time she missed due to her injury, and would experience additional wage losses in the future. Finally, McElroy presented substantial evidence that Eagle Star was the owner and/or operator of Stone Oak. This evidence included a publicly recorded easement, dated March 23, 2001, reciting that "Eagle Star Group, dba Stone Oak Apts .... owns or has control over certain real estate and improvements thereon located at 3151 Jennings Road, Independence, Missouri 64055 ... consisting of 96 residential units known as Stone Oak Apartments" and granting a cable television company an easement to install, operate, and maintain a cable communications system on the property. The easement was executed by and bore the signature of Michael Jaax, who listed himself as the "owner" of "Eagle Star Group dba Stone Oak Apartments." It also included a May 30, 2001 letter from Jaax to McElroy's mother informing her of a rent increase for Stone Oak residents effective July 1, 2001. This letter, which was signed by "Mike Jaax," bore a prominent "EAGLE STAR GROUP" letterhead.

On December 31, 2003, the trial court entered a default judgment against Eagle Star, finding that Eagle Star "is doing business as Stone Oak Apartments and is therefore responsible for the damages claimed by Plaintiff in this action." The court further found, upon consideration of the evidence before it, that McElroy sustained "severe personal injury" resulting in permanent disability, which caused her to incur past medical expenses in excess of $33,000; future medical expenses in excess

---

2. Almost a month later (*i.e.*, on or about December 22, 2003), Jaax signed the return receipt. Eagle Star's brief does not provide any explanation for this substantial delay.

3. "Once properly served, a party who defaults is charged with notice of all subsequent proceedings in the case. Therefore, a party in default has no right to notice of the default proceedings." *Bredeman v. Eno*, 863 S.W.2d 24, 26 (Mo.App. W.D.1993) (internal citations omitted). In particular, "because a defaulting defendant is charged with notice of all subsequent proceedings in the case once he has validly been served with the summons and complaint, a separate notice of a hearing to assess damages is not required." *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 540 (Mo.App. E.D.2001). We nevertheless wish to commend counsel for McElroy for what the record shows to be his repeated, forthright, and professionally courteous efforts to ensure that Eagle Star received actual notice of all important post-service developments in his client's case against Eagle Star.

of $65,000; lost wages in excess of $25,000; and future wage losses. The court ultimately assessed total actual damages against Eagle Star in the amount of $369,000.00.

Nearly a month later (January 27, 2004), Eagle Star filed a verified motion to set aside the default judgment pursuant to Rule 74.05(d), which allows a default judgment to be set aside if the movant states facts constituting a meritorious defense and shows good cause. The verified motion alleged that: (1) Eagle Star had a meritorious defense because it did not own the Stone Oak apartment complex (rather, a different corporate entity known as Day Star Properties did), and because "McElroy's injuries were likely caused by her own negligent conduct"; and (2) Eagle Star had good cause for failure to file a timely answer "because it reasonably believed its insurance carrier was doing so." McElroy filed a response on February 9, 2004, and on February 17, 2004, the trial court entered an order denying Eagle Star's January 27, 2004 motion to set aside the default judgment.

Two days later (February 19, 2004), Eagle Star filed an "emergency" motion for reconsideration. On February 24, 2004 (five days after Eagle Star filed the motion for reconsideration but before the trial court had ruled on it), Eagle Star filed a notice of appeal. Meanwhile, on March 1, 2004, McElroy filed her response to Eagle Star's motion for reconsideration, which included, among other things, evidence that Jaax was particularly knowledgeable about the legal system in general and default judgments in particular, having been a party to 189 lawsuits in Jackson County alone, 87 of which resulted in a default judgment and in most of which he acted *pro se.*

Although Eagle Star did not request an evidentiary hearing and counsel for McElroy did not believe it was entitled to one, in a March 11, 2004 letter to the trial court, a copy of which was also faxed to counsel for Eagle Star, McElroy's lawyer suggested, out of an abundance of caution, that the trial court conduct one anyway in order to allow Eagle Star "an opportunity to be heard." The trial court accepted counsel's suggestion, and on March 24, 2004, conducted such a hearing. At the commencement of the hearing, counsel for Eagle Star advised the trial court that Eagle Star did not wish to present any evidence in support of its motions and also claimed that its motion for reconsideration was moot because of the notice of appeal it had filed on February 24, 2004. The trial court denied Eagle Star's motion for reconsideration by order dated March 24, 2004. Thereafter, counsel for both parties advised the court that its "order" denying the motion to set aside the default judgment dated February 17, 2004, needed to be designated a "judgment" for purposes of appeal, and on April 16, 2004, the trial court entered a "judgment" denying Eagle Star's motion to set aside the default judgment. This appeal followed.[4]

## I.

At the outset, though neither party's brief questions this court's jurisdiction over the instant appeal, we have a duty to determine our appellate jurisdiction *sua sponte. Chromalloy Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 3 (Mo. banc 1997). In general, "[a] prerequisite to appellate review is that there be a final judgment...." *Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995). "[D]uring the thirty day period after a default judg-

---

**4.** We note that Eagle Star's appellate counsel was hired after the default occurred and after

the motion to set aside the default judgment had been filed and denied.

ment, the judgment is within the 'breast of the court' and not yet final[.]" *Hoey v. St. Luke's Episcopal Presbyterian Hosp.*, 713 S.W.2d 636, 638–39 (Mo.App. E.D.1986). "The circuit court retains control of its judgment for 30 days after denying a motion to set aside, and the judgment becomes final when the 30 days expire. A party then has 10 days to appeal the judgment." *Moore v. Baker*, 982 S.W.2d 286, 288 (Mo.App. W.D.1998) (internal citations omitted); *Rule 81.05(a)(2)(B); Rule 81.04(a)*. As noted *supra*, the trial court entered its "judgment" overruling Eagle Star's motion to set aside the default judgment on April 16, 2004, and Eagle Star filed its notice of appeal on February 24, 2004. "In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the judgment becomes final for the purpose of appeal." *Rule 81.05(b)*. "Rule 81.05(b) seeks to preserve appeals for litigants whose counsel in an abundance of caution or by mistake file premature notices of appeal...." *State ex rel. State Highway Comm'n v. Tate*, 576 S.W.2d 529, 531 (Mo. banc 1979). Therefore, Eagle Star's appeal from the trial court's April 16, 2004 order and judgment overruling Eagle Star's January 27, 2004 motion to set aside the default judgment under Rule 74.05(d) was filed on a timely basis, and we have jurisdiction to entertain it.

## II.

Eagle Star brings one point on appeal. In that sole point, Eagle Star contends the trial court erred in overruling its motion to set aside the default judgment under Rule 74.05(d) since the motion stated facts establishing a meritorious defense to McElroy's lawsuit and Eagle Star also showed good cause for setting aside the default judgment.

■ At the outset, we must determine the appropriate standard of review for a case such as this. Although this court's decisions have not always consistently reflected it, after conducting a thorough review of Missouri case law, we think the applicable standard of appellate review governing an appeal from a judgment granting or denying a motion to set aside under Rule 74.05(d) depends on whether the motion was filed before or after the underlying default judgment became final.

■ If the defaulting party's Rule 74.05(d) motion to set aside a default judgment is filed *before* the underlying default judgment has become final, "it is treated for purposes of appeal as an 'authorized after-trial motion' [under Rule 81.05(a)(2) ] and is deemed the equivalent of a motion for new trial," which "extends the trial court's control over the default judgment from 30 days to 90 days from the day the motion is filed." *Popular Leasing USA, Inc. v. Universal Art Corp.*, 57 S.W.3d 875, 877 (Mo.App. E.D.2001); *Klaus v. Shelby*, 4 S.W.3d 635, 637 (Mo.App. E.D.1999). For this reason, "[a]n appeal will not lie from an order setting aside a default judgment within thirty days after entry of judgment because during the thirty-day period, a default judgment is within the breast of the court and not yet final." *Grooms v. Grange Mut. Cas. Co.*, 32 S.W.3d 618, 620 (Mo.App. E.D.2000). This approach is consistent with that taken in *Taylor v. United Parcel Service, Inc.*, 854 S.W.2d 390 (Mo. banc 1993), where our Supreme Court reaffirmed its decision in *In re Franz' Estate*, 359 Mo. 362, 221 S.W.2d 739 (1949), which interpreted the predecessor to Rule 81.05 and held that "a motion to set aside a default judgment 'was nothing more than a motion asking the trial court to reconsider its ruling and to set aside its dismissal order. It was, in fact, simply a motion for rehearing or new

trial.'" *Taylor,* 854 S.W.2d at 393 (quoting *Franz' Estate,* 221 S.W.2d at 740). Moreover, although it was not cited in *Taylor, Gorzel v. Orlamander,* 352 S.W.2d 675 (Mo.1961), a more recent Missouri Supreme Court case directly addressing the issue, held as follows:

> [W]here a motion to set aside is filed within the period provided for filing motions for new trial, the appellate courts of this state (usually without any discussion of this question) have uniformly considered such motions as being timely and as effective as though denominated a motion for new trial. We do not think it is important whether a motion of this type is denominated a motion to set aside or a motion for new trial. The relief sought is an order setting aside the default judgment and another trial upon the merits. In that situation we think it is reasonable and proper to regard the motion filed by defendants as a motion for new trial, or the equivalent thereof, and we rule that it had the effect of vesting the trial court with jurisdiction to rule the motion upon its merits within the period of 90 days after it was filed.

*Id.* at 677–78.

 Therefore, in cases where the motion to set aside a default judgment is filed *before* the default judgment has become final, just as in cases involving the grant or denial of a timely filed motion for new trial on discretionary grounds,[5] we review the trial court's decision to grant or deny the Rule 74.05(d) motion for abuse of discretion. *See, e.g., Comstock v. Comstock,* 91 S.W.3d 174, 176 (Mo.App. W.D.

2002); *Crain v. Crain,* 19 S.W.3d 170, 174, 175 (Mo.App. W.D.2000); *H.J.I. v. M.E.C.,* 961 S.W.2d 108, 118 (Mo.App. W.D.1998); *State ex rel. Div. of Family Servs. v. Sutherland,* 916 S.W.2d 818, 821 (Mo.App. W.D. 1995); *Magee v. Magee,* 904 S.W.2d 514, 518 (Mo.App. W.D.1995).

 On the other hand, when a Rule 74.05(d) motion " 'is filed after the default judgment has become final, it is treated as an independent proceeding, separate and apart from the underlying judgment.' The independent nature of this proceeding requires the entry of a new final judgment to invoke appellate jurisdiction." *Am. Std. Ins. Co. v. Bittick,* 112 S.W.3d 55, 57 (Mo.App. W.D.2003) (quoting *Popular Leasing,* 57 S.W.3d at 878). Accordingly, a Rule 74.05(d) "motion to set aside default filed after the default judgment has become final is an independent action, and the circuit court's judgment to grant or to deny that motion is independent of the underlying judgment." *Hutchison v. Vandenburg,* 90 S.W.3d 229, 231 (Mo.App. W.D.2002) (citing *Popular Leasing,* 57 S.W.3d at 878). "In such a case, the trial court's order granting or denying the motion to set aside default judgment is itself (assuming that all other prerequisites of appellate jurisdiction are met) a separately appealable judgment." *Popular Leasing,* 57 S.W.3d at 878; *see also Casper v. Lee,* 362 Mo. 927, 245 S.W.2d 132, 135 (1952). Indeed, this court has recently held that since "[t]he direct appeal of a default judgment is not permitted," a party's failure to file a motion to set aside or vacate a final default judgment under Rule

---

**5.** In general, whether to grant or deny a motion for new trial on discretionary grounds "is for the trial court's sound exercise of discretion. Appellate review is limited to determination of whether or not there has been an abuse of discretion. When the trial court has sustained the motion for new trial, the appel-late court is more liberal in upholding its action than when the trial court has denied relief." *Cook v. Cox,* 478 S.W.2d 678, 682 (Mo.1972). *See also Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993); *Sapp v. Key,* 287 S.W.2d 775, 779 (Mo.1956).

74.05(d) meant that it was "entitled to no relief on appeal." *Leonard v. Leonard*, 112 S.W.3d 30, 37 (Mo.App. W.D.2003).

 Therefore, when a party's Rule 74.05(d) motion to set aside a default judgment is filed *after* the underlying default judgment has become final, *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), sets forth the proper standard of appellate review of the trial court's separate and independent judgment granting or denying the motion. *See, e.g., Newton v. Taylor*, 113 S.W.3d 244, 245 (Mo.App. E.D.2003); *Kenmark Motorsport, Ltd. v. Burns*, 985 S.W.2d 814, 814 (Mo.App. E.D.1998); *Safeco Ins. Co. of Am. v. Wells*, 921 S.W.2d 55, 56–57 (Mo.App. E.D.1996). *Cf. Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97, 98–99 (Mo. banc 1989).

Regrettably, this court's decisions interpreting Rule 74.05(d) have not consistently recognized or applied these distinctions. In one line of cases, we have applied an abuse of discretion standard of review where the Rule 74.05(d) motion was filed *after* the underlying default judgment had become final. *See, e.g., State ex rel. Dep't of Soc. Servs. v. Stone*, 71 S.W.3d 643, 646 (Mo.App. W.D.2002); *Gering v. Walcott*, 975 S.W.2d 496, 498, 499–500 (Mo.App. W.D.1998); *Adams v. Borello*, 975 S.W.2d 188, 190, 191 (Mo.App. W.D.1998); *Stradford v. Caudillo*, 972 S.W.2d 483, 485 (Mo. App. W.D.1998); *Brants v. Foster*, 926 S.W.2d 534, 535 (Mo.App. W.D.1996); *Moore v. Dahlberg*, 810 S.W.2d 730, 732 (Mo.App. W.D.1991).

In a second line of cases, we have "combined" or amalgamated the *Murphy* and abuse of discretion standards of review, *without regard to whether the Rule 74.05(d) motion was filed before or after* the underlying default judgment had become final. *See, e.g., Mullins v. Mullins*, 91 S.W.3d 667, 669, 672 (Mo.App. W.D. 2002); *Fuller v. Ross*, 68 S.W.3d 497, 500 (Mo.App. W.D.2001); *Lovenduski v. McGrain*, 69 S.W.3d 80, 84 (Mo.App. W.D. 2001); *Reed v. Reed*, 48 S.W.3d 634, 639 (Mo.App. W.D.2001); *Winsor v. Terex–Telelect–Inc.*, 43 S.W.3d 460, 464, 466 (Mo. App. W.D.2001); *Young v. Safe–Ride Servs.*, 23 S.W.3d 730, 732 (Mo.App. W.D. 2000); *Boatmen's First Nat'l Bank v. Krider*, 844 S.W.2d 10, 11, 12 (Mo.App. W.D. 1992).[6]

 To the extent these two lines of cases conflict with this opinion, they should no longer be followed.[7] In the case *sub judice*, Eagle Star filed its Rule

---

**6.** This court has also decided Rule 74.05(d) cases in which we simply did not set forth any standard of review. *See, e.g., Lewis v. Shields*, 25 S.W.3d 554 (Mo.App. W.D.2000).

**7.** We recognize that at first blush it seems that the application of these two standards of review depending on whether the motion to set aside is filed before or after the default judgment becomes final rewards the dilatory, because the *Murphy v. Carron* standard is less strenuous than the abuse of discretion standard. But such is not the case for two reasons. First, even where the abuse of discretion standard is employed, a trial court's discretion to *deny* a motion to set aside is much narrower and more limited than its discretion to grant it. Thus, at least where the motion to set aside is denied, the trial court's discretion is more constrained than in the usual case, and the appellate court is more likely to find an abuse of discretion. Second, in general, waiting is never a good idea since there are many cases indicating that the earlier the motion to set aside is filed, the more the court should be inclined to grant relief. "The sooner the mistake is discovered, and acted upon, the more receptive the courts should be to a motion to set aside." *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 839 (Mo.App. S.D.1996). So by consciously waiting until the default judgment becomes final before filing its Rule 74.05(d) motion to set aside, a defaulting defendant actually reduces its chances of receiving relief.

74.05(d) motion to set aside the default judgment within thirty days following entry of that judgment—that is, *before* the default judgment became final. *Rule 75.01; Popular Leasing,* 57 S.W.3d at 877. Thus, in the instant appeal, we review the trial court's decision to deny the motion for abuse of discretion.

> A motion to set aside a default judgment is left to the sound discretion of the trial court, the exercise of which will not be interfered with on appeal unless the record demonstrates an abuse of that discretion. The law favors a trial on the merits but also defends the integrity of the legal process and procedural rules and therefore does not sanction the disregard thereof. The discretion not to set aside a default judgment is a good deal narrower than the discretion to set one aside, with the result that appellate courts are more likely to interfere when the trial court has denied such a request.

*In re Adoption of Z.T.H.,* 910 S.W.2d 830, 835 (Mo.App. W.D.1995) (internal citations omitted); *Hinton v. Proctor & Schwartz, Inc.,* 99 S.W.3d 454, 458 (Mo.App. E.D. 2003). "[A] judicial act which is untenable and clearly against reason and which works an injustice" constitutes an abuse of discretion. *Egelhoff v. Holt,* 875 S.W.2d 543, 549–50 (Mo. banc 1994). An alternative formulation was approved in *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo. banc 2003), where the Court noted that "[a]n abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Either way, it is clear that "[i]f reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Id.*

### III.

As noted previously, in its sole point on appeal, Eagle Star contends the trial court erred in overruling its motion to set aside the default judgment under Rule 74.05(d) since the motion stated facts establishing a meritorious defense to McElroy's lawsuit and Eagle Star also showed good cause for setting aside the default judgment.

Preliminary to our analysis, it is important to recognize the procedural posture of this appeal. As set forth earlier, Eagle Star filed its motion to set aside the default judgment on January 27, 2004. The trial court denied Eagle Star's motion without a hearing by order dated February 17, 2004. Thereafter, on February 19, 2004, Eagle Star filed a motion for reconsideration of the denial of its motion to set aside. Even though no hearing on the motion for reconsideration was required, the trial court scheduled one for March 24, 2004. Eagle Star did not present any evidence at that hearing, and the motion for reconsideration was overruled on that date. On April 16, 2004, at the request of the parties, the trial court made the denial of the motion to set aside default judgment a final judgment for purposes of appeal by entering a "judgment" identical to its "order" of February 17, 2004.

"[A] motion for reconsideration has no legal effect because no Missouri rule provides for such a motion." *Hinton v. Proctor & Schwartz, Inc.,* 99 S.W.3d 454, 459 (Mo.App. E.D.2003). Moreover, "Rule 74.05(d) provides for the setting aside of a default judgment by the trial court when the party requesting such relief meets certain requirements in the motion requesting such relief, not in a motion for reconsideration after a judgment denying the motion requesting such relief." *Id.* at 459–60. The parties recog-

nize the distinction and concede that the appeal is from the trial court's denial, without a hearing, of Eagle Star's motion to set aside the default judgment, and without regard to the motion for reconsideration or any proceedings had thereon.

 "Rule 74.05 sets forth the basis upon which a court may set aside a default judgment...." *Mullins,* 91 S.W.3d at 670. The rule provides, in pertinent part: "Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." *Rule 74.05(d).*

> Entitlement to an evidentiary hearing on a motion to set aside a default judgment depends on meeting the pleading requirements of Rule 74.05. Under the explicit terms of Rule 74.05(d), a motion to set aside a default judgment must state facts constituting both a meritorious defense and good cause for the default. When deciding whether a moving party has complied with the pleading requirements of Rule 74.05(d), courts examine the allegations set forth in the motion to set aside the default judgment and consider the contents of any accompanying materials such as affidavits, exhibits, and proposed answers.

*Reed v. Reed,* 48 S.W.3d 634, 640 (Mo.App. W.D.2001) (internal quotation marks and citation omitted).

 With this background, we first address the good cause requirement of Rule 74.05(d). "If good cause is not established, there is no abuse of discretion in not setting aside a default judgment." *In re Marriage of Pierce,* 867 S.W.2d 237, 238 (Mo.App. S.D.1993). In *Great Southern*

*Savings & Loan Association v. Wilburn,* 887 S.W.2d 581 (Mo. banc 1994), the Missouri Supreme Court applied the standard of Rule 74.05(d) set forth *supra* and stated the rule to be that a "defaulted defendant shows good cause by proving that he or she did not recklessly or intentionally impede the judicial process." *Id.* at 584. Accordingly, "good cause excludes not only intentional conduct but also reckless conduct." *Crain,* 19 S.W.3d at 174. In the Rule 74.05 context, "reckless" has been defined as meaning "lacking in caution" or "deliberately courting danger." *In re Marriage of Williams,* 847 S.W.2d 896, 900 (Mo.App. S.D.1993). One of the quintessential characteristics of reckless conduct is set out in the latest edition of *Black's Law Dictionary:*

> Intention cannot exist without foresight, but foresight can exist without intention. For a man may foresee the possible or even probable consequences of his conduct and yet not desire them to occur; none the less if he persists on his course he knowingly runs the risk of bringing about the unwished result. To describe this state of mind the word 'reckless' is the most appropriate. The words 'rash' and 'rashness' have also been used to indicate this same attitude.

BLACK'S LAW DICTIONARY 1298 (8th ed.2004) (internal quotation marks and citation omitted). This test of foreseeability may also be met objectively: " 'To be reckless, a person makes a conscious choice of his course of action, either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to a reasonable man.' " *Mullins,* 91 S.W.3d at 670 (quoting *Marriage of Williams,* 847 S.W.2d at 900). One may also be said to have acted recklessly if he or she is intentionally indifferent to a harmful consequence in that he or she simply "does not care about the conse-

quences of his or her actions." BLACK'S LAW DICTIONARY, *supra*, at 1299; *see also Walcott*, 975 S.W.2d at 499.

 Eagle Star's verified Rule 74.05(d) motion offered the following explanation for the failure of its registered agent, Michael Jaax, to carry out his responsibility to protect Eagle Star's interests.[8] According to the motion, on October 28, 2003 (ten days before Eagle Star's answer was due), Jaax, in accordance with his "normal and customary" procedure when receiving notice of a claim, forwarded the suit paperwork he had received some twenty days earlier to Eagle Star's insurance agency, the R.J. Ahmann Company of Eden Prairie, Minnesota ("the Ahmann Company"), where it was received the following day. Reasonably assuming that Stone Oak's insurance carrier (which Jaax believed to be the Indian Harbor Insurance Company) "would be handling this matter" on behalf of Eagle Star after receiving the relevant materials he had forwarded to the Ahmann Company, Jaax "took no further action to respond" to McElroy's petition.

The Ahmann Company completed a loss notice and faxed the loss notice and suit papers to CRC, an insurance broker. On October 30, 2003, CRC faxed an acknowledgment of the claim to the Ahmann Company. Almost a month later, after having been served, on or about November 20, 2003, with McElroy's motion for an interlocutory order of default against Eagle Star, Jaax "became concerned" and telephoned Mark Ahmann ("Ahmann") of the Ahmann Company to inquire further. Ahmann assured Jaax that Stone Oak's insurance carrier "would in fact handle this matter." Based on this assurance, Jaax "took no further action" to respond to McElroy's motion.

On or about December 31, 2003, after learning that McElroy's motion for an interlocutory order of default against Eagle Star had been granted and that a default judgment had subsequently been entered against Eagle Star, Jaax "became very concerned" and again telephoned Ahmann. Ahmann reassured Jaax that Stone Oak's insurance carrier "would handle this matter." Based on this reassurance, Jaax "took no further action" in response.

On January 7, 2004, the Ahmann Company discovered that there had been what Eagle Star's brief characterizes as "a mixup and confusion" between CRC and another entity, WKF & C. The original claims adjuster at CRC no longer had the case, and the claim was mistakenly forwarded to the managing general agent, WKF & C. Apparently, CRC had confused the claim with a totally different claim that was filed on a July 2002 loss. WKF & C was faxed a copy of the claim but "the claim was lost somewhere between CRC and WKF & C."[9]

On January 16, 2004, Jaax was informed by McElroy's counsel that no insurance carrier for Stone Oak had "in any way responded" to McElroy's lawsuit. Jaax called Ahmann for an explanation, whereupon he was told that a mistake had been made in the handling of the original claim paperwork and that there was a "potential dispute" over whether Stone Oak had any insurance coverage. Immediately after learning of this "potential dispute" over

---

8. In this context, any dereliction of a corporation's registered agent is, of course, chargeable to the corporation itself. *See Barker v. Friendly Am., Inc.*, 606 S.W.2d 457, 460 (Mo. App. W.D.1980).

9. Eagle Star's brief does not state exactly when the "mix-up" occurred, how McElroy's claim was confused with a different claim for a different date, or how all this would cause Eagle Star to fail to file an answer in this case.

insurance coverage,[10] Jaax retained counsel to represent Eagle Star. Counsel filed Eagle Star's verified motion to set aside the default judgment on January 27, 2004.

The trial court implicitly found, and McElroy argues on appeal, that these circumstances did not amount to good cause. We agree.

Several months before McElroy's petition had even been filed, Jaax chose to ignore her request to notify Stone Oak's liability insurer of her potential claim, or even to acknowledge it. After being properly served with the suit papers, Jaax then waited until twenty of the thirty days comprising Eagle Star's answer period had already elapsed before forwarding them to Eagle Star's insurance agency. Moreover, he did not follow up with counsel for McElroy to ensure that an answer or other response to the petition was timely filed by Stone Oak's insurance carrier.

While Jaax's conduct up to that point could be charitably viewed as merely negligent or imprudent, it is clear that his subsequent actions recklessly impeded the judicial process, because Jaax then received a copy of McElroy's motion for an interlocutory order of default against Eagle Star, which expressly stated that Eagle Star was "now in default" since "[m]ore than 30 days have passed since service and no Answer has been filed." At that point, Jaax knew (or should have known) that the matter had not, in fact, been "taken care of" by Stone Oak's insurance carrier as he had previously assumed. Yet Jaax recklessly chose to rely on his insurance agent's contrary assurance that Stone Oak's insurance carrier "would in fact handle this matter." *See Krider*, 844 S.W.2d at 12.

But Jaax's reckless and impeditive conduct did not stop there. Incredibly, even after (1) receiving actual notice that McElroy's motion for an interlocutory order of default against Eagle Star had been granted; (2) receiving a copy of the interlocutory order itself; and (3) learning that a default judgment had subsequently been entered against Eagle Star, Jaax once again consciously chose to rely on his insurance agent's repeated but unreasonable assurance that Stone Oak's insurance carrier "would in fact handle this matter." This could well be considered evidence of Jaxx's intentional indifference to the consequences of his actions, which, as noted *supra*, is also a form of recklessness. Moreover, it was not until an additional two weeks had passed that Jaax, after having been informed by McElroy's counsel that Stone Oak's insurance carrier had never responded to the lawsuit and having learned that there might not actually be any insurance coverage whatsoever, finally retained counsel to represent Eagle Star— some nine weeks after its 30–day answer period had expired. *Cf. Great Southern*, 887 S.W.2d at 583–84; *Krugh v. Hannah*, 126 S.W.3d 391, 393 (Mo. banc 2004).

Finally, as noted *supra*, the trial court also had substantial and undisputed evidence before it that Jaax, an experienced *pro se* litigant who had participated as either a plaintiff or a defendant in more than 85 cases which resulted in default judgments, knew full well that Eagle Star's failure to file a timely answer or other response to McElroy's petition in accordance with Rule 55.25(a) could result in a default judgment against Eagle Star. While a defaulting defendant's familiarity with litigation and experience in hiring attorneys for other cases does not, standing alone, support a conclusion that the

---

**10.** As it turns out, the "dispute" was far more than "potential," since Stone Oak's insurance carrier issued a declination of coverage letter on January 23, 2004.

defendant intentionally or recklessly impeded the judicial process, *Great Southern,* 887 S.W.2d at 584, in its most recent Rule 74.05(d) case, our Supreme Court held that uncontroverted evidence of other default judgments involving the same defendant "leads to the conclusion that she was well aware of the consequences of her inattention and makes her failure to file more egregious than excusable." *Krugh,* 126 S.W.3d at 393.

 On this record, the inescapable conclusion is that the trial court most certainly did not abuse its discretion in refusing to set aside the default judgment against Eagle Star. Jaax's actions could reasonably have been viewed by the trial court as more than a series of unfortunate mishaps involving what Eagle Star's brief characterizes as merely "the negligent mishandling of paperwork." Rather, they could reasonably have been considered a continuing course or pattern of conduct "lacking in caution" and "deliberately courting danger" in the futile and unwarranted hope or expectation that Stone Oak's purported insurance carrier would somehow "take care of" McElroy's lawsuit. In short, the facts clearly show that the default judgment was the product of Eagle Star's recklessness—that is, its "conscious choice of a course of action with knowledge of the serious danger that a default judgment could result," *Marriage of Williams,* 847 S.W.2d at 902, or its intentional indifference to the judicial process. "When a litigant chooses to ignore or act in reckless disregard of the rules and procedures set out for the orderly administration of the judicial process, he cannot then be heard to complain when he receives no relief

under its rules, particularly Rule 74.05(d)." *Stradford,* 972 S.W.2d at 486. Point denied.[11]

The trial court's final order and judgment overruling Eagle Star's motion to set aside the default judgment under Rule 74.05(d) is affirmed.

All concur.

---

11. In her brief, McElroy also argues that Eagle Star's Rule 74.05(d) motion failed to state facts constituting a meritorious defense to the various negligence claims set forth in her petition. However, having already held that Eagle Star did not show good cause, there is

no need for us to address that issue, as an appellant's "[f]ailure to establish either one of these elements negates the necessity of considering the other." *Brants,* 926 S.W.2d at 535; *see also Stradford,* 972 S.W.2d at 486.