**HEINTZ ELECTRIC COMPANY,**
Respondent,

v.

**TRI LAKES INTERIORS,**
**INC., Appellant.**

No. 27129.

Missouri Court of Appeals,
Southern District,
Division Two.

March 10, 2006.

Gary R. Long, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for Appellant.

Craig F. Lowther, Michael L. Miller, Lowther Johnson, Springfield, for Respondent.

ROBERT S. BARNEY, Judge.

Tri Lakes Interiors, Inc. ("Appellant") appeals the trial court's denial of its motion to set aside default judgment pursuant to Rule 74.05(d).[1] Appellant raises two points of trial court error discussed below. We reverse and remand.

The underlying litigation involves two lawsuits arising, as best we can discern, from a lease agreement entered into by the parties and/or their assigns. Both lawsuits were filed in separate divisions of the Circuit Court of Greene County by Heintz Electric Company ("Respondent") against Appellant.

In case number 304AC7131 ("the first case") filed September 15, 2004, Respondent sought judgment against Appellant for $6,000.00 in unpaid rent, possession of the premises, interest, late fees and attorney fees. Respondent was granted a judgment which awarded it $6,000.00 in unpaid rent up to the time of the petition being filed, attorney fees in the amount of $1,000.00, and court costs.[2] Respondent then initiated execution and garnishment proceedings against Appellant in an effort to collect the aforementioned judgment. On March 7, 2005, Respondent filed a release of garnishment arising from the judgment granted it in the first case.

During the course of the foregoing proceedings in the first case, Respondent filed a second case on February 1, 2005, asserting that Appellant had failed to pay Respondent $6,000.00 per month rent "for the lease term for the months of October, No-

---

1. All rule references are to Missouri Court Rules (2005).

2. The trial court ruled that "[r]ent from and after August 2004 to date was not specifically pled and any evidence of such was objected to by [Appellant]...." It then determined that "[n]o future rent is awarded."

vember, December, January, February and March 2005." Respondent maintained Appellant owed it $36,000.00 in addition to late fees, interest, and attorney fees. When Appellant failed to file any responsive pleadings, the trial court entered a default judgment on April 5, 2005, in favor of Respondent and against Appellant in the total amount of $37,529.00 including costs incurred. Respondent again initiated execution and garnishment proceedings against Appellant.

On June 7, 2005, Appellant filed a timely motion to set aside the default judgment entered in the second case. In its motion and in this appeal, Appellant sets out various reasons for its assertion that the default judgment should be set aside.

According to Appellant, when the summons in the second case was served upon Appellant's secretary, Appellant mistakenly "assumed the papers served were [papers relating to the first case], as the parties were the same and the allegations were the same." As a result, Appellant maintained it "disregarded" the "paperwork" relating to the second case. Additionally, Appellant alleged that at the time the second case was filed it was still negotiating payment of the judgment relating to the first case with Respondent and Respondent made no mention to Appellant of its recently filed, second case. Furthermore, Appellant asserted in its motion that Respondent's "counsel never contacted or advised [Appellant's] counsel of the existence of the [second case], despite ongoing discussions concerning the [first case] for over a month after the [second case] was

filed." Lastly, Appellant also maintained that "[n]either [Appellant] nor [Appellant's] counsel received any notice of hearing from [Respondent] or their counsel of the [second case], nor were [Appellant] or [Appellant's] counsel ever advised of the entry of a default judgment in the [second case]." Appellant also asserted it did not intentionally or recklessly impede the judicial process by its actions, and only "first became aware of the entry of default judgment [resulting from the second case] on or about May 24, 2005, when [Appellant's] bank accounts were garnished by [Respondent] as a result of the entry of default judgment."

Appellant maintained it also had a meritorious defense of res judicata to Respondent's asserted cause of action in the second case, and in support alleges that because both cases concerned rents owed, the same lease, the same parties, and the same period of time, Respondent was barred from filing the second case, because of the judgment entered in the first case.

In its judgment, the trial court overruled Appellant's motion to set aside the default judgment relating to the second case. This appeal followed.

■■■ "[W]hen a party's Rule 74.05(d) motion to set aside a default judgment is filed *after* the underlying default judgment has become final, *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), sets forth the proper standard of appellate review of the trial court's separate and independent judgment granting or denying the motion." [3] *McElroy,* 156 S.W.3d at 401.

3. We note that Appellant "filed [its] Motion to Set Aside more than thirty days after entry of the default judgment—that is, after the judgment was final pursuant to Rule 75.01." *Am. Std. Ins. Co. v. Bittick,* 112 S.W.3d 55, 56–57 (Mo.App.2003). " 'When such a motion is filed after the default judgment has become final, it is treated as an independent proceeding, separate and apart from the underlying judgment.' " *Id.* at 57 (quoting *Popular Leasing USA, Inc. v. Univ. Art Corp.,* 57 S.W.3d 875, 878 (Mo.App.2001)). " 'In such a case, the trial court's order granting or denying the motion to set aside default judgment is itself

'The trial court has the discretion to set aside a default judgment, and its decision will not be interfered with unless an abuse of discretion is found. The discretion not to set aside a default judgment, however, is a good deal narrower than the discretion to set one aside. Thus, appellate courts are more likely to reverse a judgment which fails to set aside a default judgment than one which grants that relief. This is because of the law's distaste for default judgments and its preference for trials on the merits.'

*Crowe v. Clairday*, 935 S.W.2d 343, 345 (Mo.App.1996) (quoting *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 838 (Mo.App. 1996)). We will find an abuse of discretion only where the record convincingly demonstrates abuse. *Hopkins v. Mills–Kluttz*, 77 S.W.3d 624, 626 (Mo.App.2002). "[C]ourts favor a trial on the merits over a default judgment and will try to obtain such a result, unless it produces inequity." *Cont. Basketball Assn. v. Harrisburg Prof. Sports, Inc.*, 947 S.W.2d 471, 473 (Mo.App. 1997). Rule 74.05(d) "allows the trial court to set aside a default judgment 'upon motion stating facts constituting a meritorious defense *and* for good cause shown,' but only if both conditions are met.'" *Snelling v. Reliance Auto., Inc.*, 144 S.W.3d 915, 918 (Mo.App.2004) (quoting Rule 74.05) (emphasis added); *see also Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 461 n. 8 (Mo.App.2003). Additionally, "[t]he motion must be verified or supported by affidavits or sworn testimony." *Jew v. Home Depot USA, Inc.*, 126 S.W.3d 394, 396 (Mo.App.2004).

▮ Appellant's Point One reads as follows:

The trial court erred in denying [Appellant's] motion to set aside entry of default because [Appellant] alleged a meritorious defense, in that [Respondent] filed and obtained judgment on a previous lawsuit regarding the same lease, the same time period, the same parties, and the same damages, and this action was barred by res judicata due to the judgment in the first [case], especially since [Respondent] had the opportunity, pursuant to the lease to seek the remaining balance due under the lease in the first petition and, in fact, orally moved to do so at trial, but was denied by the trial court, and [Respondent] did not appeal that ruling.

In our review of Appellant's first point, we note that Rule 74.05(d) states:

Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. An order setting aside an interlocutory order of default or a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default.

▮ In order to show a meritorious defense, the party in default need not present extensive evidence " 'to make some showing to the court of at least an arguable theory of defense.' " *Snelling*, 144 S.W.3d at 918 (quoting *Newton v.*

(assuming that all other prerequisites of appellate jurisdiction are met) a separately appealable judgment.' " *McElroy v. Eagle Star*

*Group, Inc.*, 156 S.W.3d 392, 400 (Mo.App. 2005) (quoting *Popular Leasing*, 57 S.W.3d at 878).

*Manley,* 824 S.W.2d 522, 525 (Mo.App. 1992)). "Although there is no universal standard which establishes the components of a meritorious defense, it has been interpreted to mean 'any factor likely to materially affect the substantive result of the case.' " *Tinsley v. B & B Engines, Inc.,* 27 S.W.3d 859, 861 (Mo.App.2000) (quoting *Yerkes v. Asberry,* 938 S.W.2d 307, 309 (Mo.App.1997)). "Further, the concept of meritorious defense is not intended to impose a 'high hurdle,' but is designed to allow the case to be decided on the merits where there are legitimate issues to be considered." *Yerkes,* 938 S.W.2d at 309. " 'When the meritorious defense is factual in nature, the party in default should recite particular facts, which if proved, would constitute a meritorious defense.' " *Jew,* 126 S.W.3d at 396 (quoting *Bredeman v. Eno,* 863 S.W.2d 24, 26 (Mo.App.1993)). " 'This does not mean, however, that such a defense must be conclusively proven. It is enough that some showing be made of the existence of at least an arguable theory from which a defense may be made.' " *Newton,* 824 S.W.2d at 525 (quoting *Gibson by Woodall v. Elley,* 778 S.W.2d 851, 855 (Mo.App.1989)).

▮▮▮▮ Here, the meritorious defense alleged by Appellant is that of res judicata. "[R]es judicata operates as an affirmative defense, which, if properly invoked, will prevent litigation of a claim arising out of the same transaction or occurrence that is the subject of the earlier judgment." *Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528, 535 (Mo.2002). The doctrine "applies not only to losers, but also to parties that prevailed in an earlier judgment." *Chesterfield Village v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002). "The doctrine precludes not only those issues on which the court in the former case was required to pronounce judgment, 'but to every point properly be-longing to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.' " *Id.* (quoting *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991). In order for res judicata to be applicable " 'four identities' must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." *Patrick v. Koepke Constr., Inc. v. Woodsage Constr. Co.,* 119 S.W.3d 551, 555 (Mo.App.2003).

In the first case, Respondent sought $6,000.00 owed for one month of unpaid rent based on the breach of a lease contract involving Appellant and Respondent or their assigns in their capacity as lessee and lessor of commercial property. Whereas, in the second case, Respondent sought $36,000.00 "for the lease term for the months of October, November, December, January, February and March 2005," based on the breach of a lease contract as evidenced by the first case involving Appellant and Respondent or their assigns in their capacity as lessee and lessor of commercial property. Accordingly, Appellant argues that because in the first case Respondent could have brought its action for both the $6,000.00 in unpaid rent *and* the $36,000.00 remaining on the lease term, its affirmative defense of res judicata is " 'at least an arguable theory of defense.' " *Snelling,* 144 S.W.3d at 918 (quoting *Newton,* 824 S.W.2d at 525). In so far as the trial court may have denied Appellant's motion to set aside based on a lack of meritorious defense, the trial court erred. Point One is well taken.

▮▮▮ In Appellant's Point Two, Appellant maintains the trial court erred in denying its motion to set aside the default

judgment because it "demonstrated good cause ..." in that while Appellant's employee was served with the summons in the second action, it was inadvertently discarded "under the mistaken belief that it related to the [first case]...." Appellant additionally asserts that it "sought relief immediately after becoming aware of the default and did not intend to impede the judicial process" by failing to respond to the petition in the second case.

■■■■ " 'Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.'" *Winsor v. Terex–Telelect–Inc.*, 43 S.W.3d 460, 464 (Mo.App.2001), *overruled on other grounds by McElroy*, 156 S.W.3d at 401 (quoting Rule 74.05(d)). "Under the language of Rule 74.05(d), 'good faith mistakes may constitute good cause, and a default judgment can be vacated even if the movant has negligently failed to file a timely answer.'" *Id.* (quoting *Billingsley v. Ford Motor Co.*, 939 S.W.2d 493, 498 (Mo.App.1997)). " 'The good cause requirement of Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process.'" *Id.* (quoting *Billingsley*, 939 S.W.2d at 498). " 'Good cause' is to be interpreted liberally, 'not only to prevent a manifest injustice but to avoid a threatened one especially in cases tried without a jury where evidence on one side only is presented.'" *Id.* (quoting *Young v. Safe–Ride Servs.*, 23 S.W.3d 730, 732 (Mo.App.2000), *overruled on other grounds by McElroy*, 156 S.W.3d at 401.

Thus, in *Continental Basketball*, 947 S.W.2d at 474, the court determined that good cause existed to set aside a default judgment when defendant's counsel mistakenly allowed a default judgment to be entered against defendant in the mistaken belief that counsel had filed an answer in the proper court, as the parties had three suits pending at the same time in three different venues. Further, in *Clark v. Brown*, 814 S.W.2d 634, 639–40 (Mo.App. 1991), good cause existed where the secretary who had possession of legal documents failed to forward the documents to counsel resulting in a default judgment. *See also Brueggemann v. Elbert*, 948 S.W.2d 212, 214 (Mo.App.1997).

■■■■ Here, Respondent maintains that Appellant failed to demonstrate good cause because it recklessly impeded the judicial process by disregarding the summons and petition after being property served. "To be reckless, a person makes a conscious choice of his course of action...." *Gibson*, 778 S.W.2d at 854 (internal quotation omitted). "Recklessness involves some element of deliberateness and of risk." *Brueggemann*, 948 S.W.2d at 214.

In the instant matter, however, there is little evidence that the actions taken by Appellant's employee were reckless, as previously defined. Most certainly there is no evidence suggesting that the actions of Appellant's employees were designed to thwart the judicial process. According to the affidavit of Appellant's sole shareholder, who "had no legal training" and was "not versed in legal issues concerning courts or procedural rules of same," Appellant was "a party to another lawsuit concerning the same Plaintiff's [sic]...." As affiant set out, "the documents" consisting of the pleadings and summons in the second case "appeared to be about the same things which the [first case] concerned," and were "mistakenly ignored" and "were not presented to our legal counsel for handling as I thought the matters between [Appellant and Respondent] were resolved

by the [first case]."[4] Affiant also related that "although irresponsible," the actions of Appellant "were not intended to intentionally or recklessly disregard this court['s] authority or this court['s] processes, nor were such actions intended to impeded the judicial process, but were the result of an honest mistake concerning a matter which was thought to being handled [by the first case]."

The record also reveals that Appellant seasonably filed its motion to set aside the default judgment entered in the second case within less than a month after Respondent filed its garnishment in aid of executing on its second judgment, and about sixty days from the rendition of the default judgment against it. "The sooner the mistake is discovered, and acted upon, the more receptive the courts should be to a motion to set aside." *Myers*, 914 S.W.2d at 839. " 'Prompt action to set aside a judgment is less threatening to the stability of the final judgment rule than action taken substantially later.' " *Id.* (quoting *Bell v. Bell*, 849 S.W.2d 194, 198 (Mo.App. 1993)).

Guided by the principles announced in the foregoing cases, we determine that Appellant has shown good cause for its failure to file an answer to the petition. Rule 74.05(d). It was an abuse of discretion by the trial court to refuse to set aside the default judgment.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

SHRUM, P.J., and GARRISON, J., concur.

4. Recall, of course, that the garnishment proceedings, seeking to satisfy the money award in the first case were on going at the time

Respondent filed the second case on February 1, 2005.