John **PYLE**, Respondent,

v.

**FIRSTLINE TRANSPORTATION SECURITY, INC.,** Appellant.

**Nos. WD 67323, WD 67349.**

Missouri Court of Appeals, Western District.

Aug. 7, 2007.

---

**1.** All references are to Mo. Rules Crim. P.2004 unless otherwise indicated.

Michael Lewis Blumenthal, Kansas City, for Appellant.

Kristi Lynn Kingston, Kansas City, for Respondent.

Before PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

FirstLine Transportation Security, Inc. appeals the judgment of the trial court refusing to set aside a default judgment entered against FirstLine in favor of the plaintiff, John Pyle. Because we find that FirstLine established good cause for failing to respond to the underlying petition in this case and a meritorious defense to the claim, the judgment is reversed and remanded to the trial court for further proceedings.

## Background

FirstLine is a private company that screens security employees for the Transportation Security Administration, an agency created by Congress after September 11, 2001. On August 26, 2005, John Pyle filed the underlying lawsuit against FirstLine alleging disability discrimination under the Missouri Human Rights Act. The registered agent for FirstLine was served with process on September 8, 2005, but FirstLine filed no answer and took no other action to defend against this claim.

On December 14, 2005, on Mr. Pyle's motion and after a hearing, the trial court entered a default judgment in favor of Mr. Pyle in the amount of $510,000. On January 13, 2006, FirstLine filed a Motion to Set Aside the December 14, 2005 Judgment. A hearing was held on May 5, 2006.

The evidence presented at the hearing indicated that upon being served Septem-

ber 8, 2005, CT Corporation forwarded the summons and petition to SMS Holdings Corporation, FirstLine's parent company, in accordance with their normal practice. Villette Roberts, Operations Assistant for SMS Holdings, did not recall receiving the summons from CT Corporation. She signed for the FedEx delivery, but since it was addressed to Carol Doezema, she would not have opened it, but would have forwarded it to Ms. Doezema and, therefore, had no knowledge of its contents.

Carol Doezema, an employee in Contract Administration for SMS Holdings, forwarded the document to the Employee Relations section of the Human Resource Department, which is the section responsible for litigation matters.

William Stejskal, Vice President of Human Resources for SMS Holdings, is in charge of the Employee Relations section of the Human Resources Department. He was aware of an Equal Employment Opportunity Commission (EEOC) charge Mr. Pyle had filed against FirstLine, to which FirstLine had responded. Stejskal was aware that the EEOC issued a Dismissal and Notice of Rights, but up until recently, had not been aware of any further activity related to Mr. Pyle's claim. Mr. Pyle's attorney informed the company of the intention to sue FirstLine when the EEOC and the Missouri Human Rights Commission issued a Right to Sue letter. Stejskal knew that Pyle had been issued a "right to sue" letter, but the company's normal practice is to wait for a summons to be delivered and then act on the lawsuit.

Stejskal first learned of this lawsuit when he received the bill for court costs, which was received on January 10, 2006, about four months after service of the summons. He then searched and found the summons and complaint in the "EEOC file." Upon further investigation, he discovered that on the week of September 9,

2005, when the summons would have been sent to SMS Holdings, he was out of town. The two other supervisors who would have been responsible for responding to such a summons, Mary Ellen Yarbrough and Carolyn Bowlds, were also out of the office at that time.

According to Stejskal's research of company records, the only employee present in the Employee Relations section of the Human Resources Department on the day that the summons and petition was delivered was Joyce Mabry. Ms. Mabry was a new employee who had not been fully trained. Hurricane Katrina had struck New Orleans in late August and the levee broke early in September. The hurricane and flooding affected approximately 137 employees of FirstLine. Stejskal said Ms. Mabry's training was put on hold. The company assigned her to the primary task of taking all hotline calls from employees affected by the hurricane and assisting the employees and their families. The assignment, Stejskal suggested, was overwhelming, causing Ms. Mabry to abruptly resign without notice on September 19, 2005.

Stejskal suggested that Ms. Mabry, who would have received the summons and petition, likely would not have known of the need for quick action. She placed the documents in the "EEOC file" without notifying anyone of its arrival. Stejskal indicated that FirstLine had been unable to contact Ms. Mabry. Stejskal testified that the company did not receive any notice of the motion for default judgment, of the hearing on the motion, or of the entry of judgment.

On the subject of "meritorious defense," Stejskal testified that before September 11, 2001, the airlines were responsible for their own security screening. As a result of the attacks on the United States on September 11, 2001, Congress passed the Air Transportation Security Act (ATSA),

which created the Transportation Security Administration (TSA). Screening of passengers and baggage became a federal duty overseen by the TSA.

FirstLine is a private contractor that screens and hires security employees for the TSA. FirstLine handles the initial screening of applicants for security positions. After FirstLine's initial screening, however, a separate private contractor called CPS[1] runs candidates through several tests. The TSA will not permit First-Line to hire candidates who do not pass CPS's screening. CPS has no relationship with FirstLine, contractual or otherwise. CPS works directly for TSA. FirstLine has no input as to the testing created by CPS for candidates.

The discrimination in hiring, about which Pyle complains, apparently occurred as a result of his inability to complete CPS's tests and their unwillingness to create accommodations for his disability. FirstLine has had to defend against several similar lawsuits. In each case, once FirstLine explained the matter, all plaintiffs have voluntarily dismissed their claims against FirstLine.

The motion court concluded first that it lost jurisdiction over FirstLine's motion to set aside the default judgment on April 14, 2006. Relying on this court's holding in *McElroy v. Eagle Star Group, Inc.*, 156 S.W.3d 392 (Mo.App.2005), the motion court concluded that because the motion to set aside the default judgment was made before the underlying default judgment became final, it was treated as an authorized after-trial motion under rule 81.05(a)(2).[2] Therefore, the motion court concluded that it lost jurisdiction ninety days after the motion to set aside the default judgment was filed, or April 14, 2006.

The motion court also concluded that, if it did have jurisdiction, FirstLine did not sustain its burden to demonstrate "good cause" for its failure to respond to the summons. The court found FirstLine's evidence to be based upon speculation, rather than factual evidence. The court made no finding on whether or not First-Line had shown a "meritorious defense" within the meaning of Rule 74.05.

FirstLine appealed to this court both from the original default judgment entered against it on December 14, 2005, and also from the denial of its motion to set aside the December 14, 2005, judgment. At the request of Pyle, these appeals were consolidated because they contained the same issue.

## Jurisdiction

The parties disagree about whether the trial court had jurisdiction to rule on the motion to set aside after ninety days had elapsed from the entry of the default judgment. Pyle argues that FirstLine's motion was an authorized after-trial motion and that, according to Rule 81.05(a)(2), it

---

1. It is unclear from the record what the acronym "CPS" stands for.

2. Rule 81.05, in relevant part, states that:
 (a) Finality as Affected by After–Trial Motions. For the purpose of ascertaining the time within which an appeal may be taken:
 (1) A judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed.

 (2) If a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following:
 (A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or
 (B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later.

extended the trial court's jurisdiction over the default judgment to ninety days from the filing of the motion. Therefore, once the ninety days had expired on April 14, 2006, the trial court lost jurisdiction.

■ We disagree. We believe First-Line is correct that the trial court had jurisdiction to rule on the motion to set aside; however, the basis of our belief is different. We conclude, after review of the ruling in *In re Marriage of Coonts*, 190 S.W.3d 590 (Mo.App.2006), and the language of Rule 74.05, that FirstLine's motion was an independent action and was not subject to the ninety-day rule of Rule 81.05(a)(2) applicable to after-trial motions.

In *Coonts*, the Southern District concluded that a motion to set aside a default judgment under Rule 74.05(d) "is an independent action, regardless of when it is filed, requiring an independent judgment." 190 S.W.3d at 604. In keeping with *Coonts*, Rule 74.05 was amended, effective January 1, 2007. The new rule states that "[a] motion filed under this Rule 74.05(d), even if filed within 30 days after judgment, is an independent action and not an authorized after-trial motion[.]"

■ Although this new rule was not effective until January 1, 2007, and the motion to set aside the default judgment in this case was filed on January 13, 2006, it reflects the Missouri Supreme Court's agreement with the Southern District's reasoning and holding in *Coonts*. We believe that *Coonts* accurately stated the law and that all motions to set aside a default judgment are to be treated as independent actions.

For this reason, we conclude that the motion to set aside the default judgment in this case, as in all cases, was an independent action. Therefore, the court did not lose jurisdiction to hear the matter after the expiration of ninety days.

The court had jurisdiction to examine the merits of the motion and did consider the merits of the motion. We, therefore, turn to the merits of FirstLine's motion to set aside the default judgment.

## Good Cause

■ Because the motion to set aside a default judgment is treated as an independent action requiring an independent judgment of the court, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Coonts*, 190 S.W.3d at 603. Accordingly, we will affirm the ruling of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. We will only "exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.*

■ Under Rule 74.05(d), a default judgment may be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown." It is also mandatory that "[t]he motion ... be made within a reasonable time[.]" In other words, it is contingent upon the movant to (1) file his motion within a reasonable time, (2) show a meritorious defense, and (3) show good cause for failure to answer the original summons. *In re Marriage of Macomb*, 169 S.W.3d 191, 193 (Mo.App. 2005). Pyle does not dispute that First-Line filed its motion within a reasonable time. Pyle does take issue, however, with FirstLine's assertion of good cause and meritorious defense. The trial court found that FirstLine did not establish good cause and it did not address whether or not FirstLine established a meritorious defense.

 The rule defines "good cause" as "a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." Rule 74.05(d). Good faith mistakes can constitute good cause and the default judgment can be vacated even though a party has negligently failed to timely file an answer. *Macomb,* 169 S.W.3d at 194. Good cause should be interpreted liberally not only to prevent a manifest injustice, but also to avoid a threatened one, especially in cases tried without a jury where evidence on only one side is presented. *Heintz Elec. Co. v. Tri Lakes Interiors, Inc.,* 185 S.W.3d 787, 793 (Mo.App.2006).

 FirstLine argues that its explanation of what happened to the summons constituted "good cause." FirstLine argues that it failed to answer only because of a clerical error made by a new employee, Ms. Mabry, who was not aware of the importance of the document she received and was overwhelmed by her current job helping victims of Hurricane Katrina. We agree that all three appellate districts have held that mistakes such as document mishandling can be "good cause" sufficient to set aside a default judgment. *Young v. Safe–Ride Servs.,* 23 S.W.3d 730, 733 (Mo. App.2000), *overruled on other grounds by McElroy,* 156 S.W.3d at 401.[3] Indeed, clerical errors or misplacement of documents is frequently the reason for which Missouri courts find good cause for failure to answer. *See Heintz,* 185 S.W.3d 787; *Winsor v. Terex–Telelect–Inc.,* 43 S.W.3d 460 (Mo.App.2001), *overruled on other grounds by McElroy,* 156 S.W.3d at 401; *Billingsley v. Ford Motor Co.,* 939 S.W.2d 493 (Mo.App.1997).

In response to these arguments, Pyle points to the trial court's finding that FirstLine's evidence was based on mere speculation, rather than fact, particularly since it did not produce Ms. Mabry as a witness at trial, the very person FirstLine claims misplaced the original petition. We do not agree that FirstLine's evidence as to what occurred on the day the petition was mere speculation.

FirstLine showed that the summons and petition were forwarded to the Employee Relations section of the Human Resource Department of SMS Holdings, which would handle the sort of litigation that the petition raised. Although the affiants did not remember clearly their actions, there were normal procedures in place that they would have followed. This is verified by the fact that the summons was later found at the Employees Relations section of the Human Resource Department, the place that the summons was supposed to end up so that it could be handled through that section.

 FirstLine's witness Stejskal, after having investigated the matter, reasonably concluded that a non-managerial, clerical person received the petition, did not realize its importance, and filed it in the EEOC file where it was later found. The inferences could be made because facts at his disposal indicated that the clerical person was the only employee in the office at the time in question. Pyle makes much of the fact that Ms. Mabry, who had moved out of state after leaving the company, was not deposed or produced to testify. Although there might well have been some

---

**3.** Both *Young,* 23 S.W.3d 730, and *Winsor,* 43 S.W.3d 460, *infra,* were overruled in part by *McElroy,* 156 S.W.3d at 401, which held that a motion to set aside a default judgment filed before the underlying default judgment was final is an after-trial motion. As noted, *supra,* this part of *McElroy* was rejected by the Southern District of this court in *Coonts,* 190 S.W.3d at 602–03. The Missouri Supreme Court sided with the *Coonts* interpretation in its 2007 amendment to Rule 74.05.

value in hearing from Ms. Mabry, realistically it can be assumed that Ms. Mabry would not give a highly cogent explanation for any actions she took as to the summons. It is also possible she would not even remember the summons. What is significant is that Stejskal testified that none of the managerial employees was present at that time or became aware of the summons. When the evidence raises a reasonable inference that the mistake was by a clerical person and involved inadvertence, and when there is no evidence that the conduct was intentionally or irresponsibly designed to impede the judicial process, the matter should be regarded as good cause. *See Myers v. Pitney Bowes, Inc.,* 914 S.W.2d 835, 839 (Mo.App.1996).

In *Myers,* the defendant was served with process and the lawsuit was transmitted to the defendant's Connecticut headquarters. *Id.* at 838. At that time, the headquarters was undergoing some reorganization of its Human Resources Department and Disability Department. *Id.* The motion was apparently lost in the shuffle of this reorganization, and it did not come to anyone's attention until after the default judgment had already been entered. *Id.* The trial court there ruled that the defendant had not shown good cause for its failure to appear. The court of appeals reversed, finding that there was no evidence that the defendants engaged in conduct designed to impede the judicial process. *Id.* at 839.

Similarly, in *Gibson by Woodall v. Elley,* 778 S.W.2d 851 (Mo.App.1989), the petition documents were sent to the Law/Claims Department in accordance with the normal practice, but all of the personnel in the department were attending a meeting out of town and the office was staffed solely by temporary secretaries. *Id.* at 853. Somehow, during that week the document was lost, and when it was found it was in a stack of miscellaneous papers which were in no way related to the lawsuit. *Id.* The trial court there also refused to set aside the default judgment. The appellate court reversed the trial court, stating that "[g]iven the peculiar circumstances of the instant case it is evidence that good cause did exist to set aside the default judgment." *Id.* at 855.

 FirstLine's predicament is similar to that of the defendants in *Myers* and *Gibson.* It is clear that through some mishandling on the part of a clerical employee in the Employee Relations section of the Human Resource Department, the summons was wrongly filed in the "EEOC file" where it would not quickly come to a manager's attention. This can be said to be negligence on the part of the employee, but absent some evidence that significantly implicates an officer or management employee, it is not conduct intentionally or recklessly designed to impede the judicial process. "A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency." *Id.* at 854 (*quoting Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 235 (Mo.App.1987)). Clearly, it was the inadvertence, incompetence, unskillfulness, or failure to take precautions of a clerical person that resulted in the petition and summons here being misfiled.

It is true that Stejskal knew that Pyle might file a lawsuit, and perhaps he was negligent in failing to make sure that the new clerical helper was fully trained, but we see no indication of any authority allowing us to can say that he was *reckless* in assuming that if a summons were received it would be called to his or some other officer's attention.

### Distinction Between Clerical Employees and Individual Defendants

Our cases will sometimes draw a distinction between the mishandling of a summons by an individual defendant as opposed to a mishandling of a summons by a member of the clerical staff of an organization. *See Winsor,* 43 S.W.3d 460 (paralegal inadvertently failed to enter a case into the database and, as a result, the case had been forgotten by the attorney of record when she returned from her maternity leave); *Gibson by Woodall,* 778 S.W.2d 851 (temporary clerical staff mishandling of summons constituted "good cause"). These cases differ from the disregard of a summons by an individual defendant. *See In re Marriage of Macomb,* 169 S.W.3d 191 (Mo.App.2005) (husband's failure to respond to summons in divorce proceeding was not "good cause" because he was personally served and was not permitted to rely on wife in regard to his legal obligations); *Crain v. Crain,* 19 S.W.3d 170 (Mo.App.2000) (husband did not show "good cause" for failure to respond to summons). A clerical level employee in an organization governed by others may not feel the weight and significance of a summons that an individual should feel when he or she is the target of a lawsuit. The non-managerial, clerical employee may err without realizing the consequences of his or her actions. But an individual defendant, or a management level employee, or a registered agent of a corporate entity, all should be assumed to have a better idea of the potential gravity of a litigation summons and the need for quick action. When the case involves mishandling by lower-level, non-managerial employees, the mistake is more likely to be negligent; whereas a mistake by upper-level management employees, or by individual defendants, is more likely to be presumed reckless or intentional.

Here, FirstLine demonstrated sufficiently that the mishandling was performed by a clerical, non-managerial employee. The mishandling was likely performed by Ms. Mabry, a new hire who was poorly trained due to disruptive events. We hold that FirstLine made the requisite showing of "good cause" based on the evidence it presented, and that the trial court's finding that FirstLine failed to establish "good cause" was against the weight of the evidence.

### Meritorious Defense

The trial court below made no finding of whether or not FirstLine had established a "meritorious defense." In the interest of judicial efficiency, we have reviewed this issue as well and find that FirstLine showed a meritorious defense.

■■■■ In order to show a meritorious defense, a party need not present extensive and airtight evidence. *Heintz,* 185 S.W.3d at 791. He or she need only make some showing of at least an arguable theory of defense. *Id.* "Meritorious defense" has been interpreted liberally to mean " 'any factor likely to materially affect the substantive result of the case.' " *Id.* at 792 (*quoting Tinsley v. B & B Engines, Inc.,* 27 S.W.3d 859, 861 (Mo.App.2000)). This concept is not intended to impose a high hurdle, but is meant to allow the case to be decided on its merits where there are legitimate issues to be considered. *Id.* A party satisfies the requirement if he or she sets forth allegations which, if supported by evidence, would defeat or adversely affect the plaintiff's claim. *Winsor,* 43 S.W.3d at 466. Whether the evidence is credible is to be determined *after* the default judgment is set aside at a subsequent trial on the merits. *Id.*

FirstLine argues that if there was discrimination, it was CPS who discriminated against Mr. Pyle, rather than FirstLine. FirstLine asserts that it had no choice in whether or not to hire Mr. Pyle, because the TSA does not permit it to hire anyone who does not pass CPS's screening. FirstLine asserts that CPS is not its agent, but answers directly to TSA. This asserts a "meritorious defense" to the petition.

Pyle argues that FirstLine failed to present the precise contractual agreement between FirstLine and the TSA and/or CPS, and that, again, FirstLine is basing its defense on speculation. FirstLine offered this theory of defense through Stejskal's testimony. The proffered defense does not need to be conclusively proven. *Myers,* 914 S.W.2d at 840. FirstLine has shown the existence of at least an arguable theory of defense that it intends to assert. *See id.* at 839. FirstLine has established a meritorious defense for purposes of Rule 74.05.

## Conclusion

The trial court had jurisdiction to rule on FirstLine's motion to set aside the default judgment because it was an independent action. We hold that FirstLine established "good cause" and a "meritorious defense" and that, therefore, the trial court erred in failing to grant FirstLine's motion to set aside the default judgment. We note that the trial court mentioned in its judgment that "[i]n the event it is determined on appeal that the default judgment should be set aside then plaintiff should receive from defendant reasonable attorney's fees and costs as a condition of setting aside the default judgment." Since we remand to the trial court to set aside the default judgment, at that time the trial

court can, in its discretion, allow reasonable attorney's fees as a condition of the set aside.[4] The judgment is reversed and remanded to the trial court with directions to set aside the default judgment.

SPINDEN and BRECKENRIDGE, JJ., concur.

---

4. The trial court noted that the parties had indicated that an attorney's fees award of approximately $7,000 would be appropriate in the event of a set aside.