**HERITAGE WARRANTY INSURANCE, RRG, INC., Appellant,**

v.

**Lindel SWINEY, d/b/a American Pro–Tech Marine, Inc., Respondent,**

and

**William B. McMurray and Susan J. McMurray, Intervenors.**

No. 28086.

Missouri Court of Appeals, Southern District, Division One.

Feb. 6, 2008.

Greggory D. Groves, Lowther Johnson, Springfield, MO, for Appellant.

Andrew Bennett, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, MO, for Respondent.

Deborah K. Dodge, Hall, Ansley, Rodgers & Sweeney, P.C., Springfield, MO, for Intervenor.

DANIEL E. SCOTT, Judge.

Appellant appeals the setting aside of a default judgment.

### *Standard of Review*

A trial court has broad discretion to set aside a default judgment; we will interfere only if the court abuses that discretion. *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 686, 687 (Mo. banc Dec.18, 2007). We find abuse of discretion only if the record convincingly so demonstrates. *Heintz Elec. Co. v. Tri Lakes Interiors, Inc.*, 185 S.W.3d 787, 791 (Mo.App.2006); *Hopkins v. Mills–Kluttz*, 77 S.W.3d 624, 626 (Mo.App.2002). It is no abuse of discretion to set aside a default judgment unless such is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State ex rel. Dept. of Social Ser-*

vices v. Stone, 71 S.W.3d 643, 646 (Mo. App.2002). There is no abuse of discretion if reasonable minds could differ on the propriety of the result. *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 449 (Mo.1976).

■■■ A court's discretion to set aside a default judgment is a good deal broader than its discretion not to do so. Appellate courts are less likely to reverse the setting aside of a default judgment than a refusal to do so, since the law disfavors default judgments and prefers trials on the merits. *Dozier v. Dozier*, 222 S.W.3d 308, 311 (Mo. App.2007); *Heintz Elec.*, 185 S.W.3d at 791.

### Facts and Procedural Background

Viewed in accordance with the trial court's broad discretion, the record shows Respondent to be a seller of extended service contracts for boat motors, and Appellant as his reinsurer. When Respondent sold a contract, he paid Appellant 7% of the proceeds for stop-loss coverage, retained $95 as an administration fee, and held the balance in reserve against future contract claims.

After the parties' relationship terminated in 2004, Appellant filed suit seeking control of Respondent's reserves (the "first suit"). Respondent thereafter established a credit line at Liberty Bank for payment of claims. Respondent's credit line was secured by his certificate of deposit and an annuity owned by his uncle.

In August 2005, the first suit was resolved via an "Agreed Order and Dismissal Without Prejudice," which required Respondent to use his CD to pay off Liberty Bank's credit line, then deposit the balance into the parties' new joint account at Lib-

erty Bank. Respondent did so, and about the same time, traveled to Florida to attend real estate and auctioneering school.

The Agreed Order also called for Respondent's uncle, a non-party to the first suit, to assign his annuity to the parties' new joint account. He refused, although Respondent had believed his uncle would do so and did everything in his power to persuade his uncle to do so.

In response, Appellant filed this action in November 2005. Count I sought injunctive relief requiring Respondent to place $200,000 in trust as security for future claims and expenses. Count II sought an unspecified sum for breach of contract. Count III alleged contempt of court.

Respondent, then in Florida, had a friend staying at his Missouri home. The friend informed Respondent that someone had brought papers to the door for him. Respondent asked his friend to take them, but the delivering party would not leave them. Respondent's friend gave Respondent's cell number to the individual. Respondent returned to Missouri, and on December 5, met the individual at a parking lot and received the new petition and summons. Respondent skimmed them and saw the parties and subject matter were the same as the first suit. He did not realize the first suit was dismissed, and did not think it would be dismissed until he got his uncle's annuity assigned. He thought they were papers relating to the first suit. He assumed his lawyer already received the same papers and would contact him if necessary. He stuffed them in his briefcase and did nothing.

Upon Respondent's failure to timely answer, Appellant took a $200,000 default judgment on January 24, 2006.[1]

---

1. The $200,000 default judgment apparently related to Appellant's Count II contract claim, which sought unspecified money damages.

Rule 55.05 requires non-tort pleadings to state the amount of money sought. The Eastern District has held that a trial court lacked

Three days later, Appellant garnished the parties' joint account, netting $41,542. Respondent learned of these actions in February or March 2006 when he called Appellant's office on other matters. Respondent called Liberty Bank and was told the joint account was closed. Respondent contacted his lawyer, who said he had up to a year to move to set aside the judgment, although the sooner the better. Respondent lacked funds to file the motion at that time.

In May 2006, Appellant levied on a house that William and Susan McMurray bought from Respondent on January 30, 2006. The McMurrays sued Appellant the following month. Six weeks later, Respondent moved to set aside the default judgment. The McMurrays intervened. The trial court held an evidentiary hearing and set aside the default judgment.

### Rule 74.05(d) and Analysis

A trial court may set aside a default judgment:

> Upon motion stating facts constituting a meritorious defense and for good cause shown ... made within a reasonable time not to exceed one year after the entry of the default judgment. "Good cause" includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.

Rule 74.05(d). Appellant claims there is a further requirement that there be no substantial harm by delay from the default being set aside, citing *In re Marriage of*

*Balough,* 983 S.W.2d 618, 624 (Mo.App. 1999).

Appellant is not arguing that Respondent lacks a meritorious defense. Appellant challenges the issues of good cause, timeliness, and substantial harm.

### Point I—Good Cause

■■ Appellant's Point I attacks the trial court's finding of good cause. Rule 74.05(d)'s good-cause prong is satisfied by showing the defaulting party did not recklessly or intentionally impede the judicial process. Good faith mistakes may constitute good cause, and a default judgment can be vacated even if the defendant negligently failed to file a timely answer. *Heintz Elec.,* 185 S.W.3d at 793; *In re Marriage of Macomb,* 169 S.W.3d 191, 193–94 (Mo.App.2005).

■■ Good cause is liberally interpreted, not only to prevent a manifest injustice but to avoid a threatened one, especially in cases where only one side has presented evidence. *Heintz Elec.,* 185 S.W.3d at 793; *Mullins v. Mullins,* 91 S.W.3d 667, 670 (Mo.App.2002). In close cases, deference must be given to the trial judge's decision as to whether particular conduct was excusable. *Fuller v. Ross,* 68 S.W.3d 497, 502 (Mo.App.2001). Reasonable doubt should be resolved in favor of good faith. *Myers v. Pitney Bowes, Inc.,* 914 S.W.2d 835, 839 (Mo.App.1996).

In *Heintz Electric,* the defaulting defendant "mistakenly 'assumed the papers served were [papers relating to the first

subject matter jurisdiction to award default damages, in contract, greater than the dollar amount prayed for in the petition. *Jew v. Home Depot, USA, Inc.,* 126 S.W.3d 394, 397–98 (Mo.App.2004). If indeed this is a jurisdictional defect, Appellant's appeal arguably fails on this basis. However, it is unclear that our court fully accepts this aspect of *Jew. Cf. Weidner v. Anderson,* 174 S.W.3d 672, 682–83

(Mo.App.2005)(although distinguishing *Jew* as a default case; also calling Rule 55.05 "a procedural requirement" and "reject[ing] the notion that failure to allege a specific amount of damages deprived this trial court of subject matter jurisdiction."). Our disposition renders further analysis of this issue unnecessary at this time.

case], as the parties were the same and the allegations were the same.' " 185 S.W.3d at 790. This court found that the defendant had shown good cause for failing to answer the petition, and the trial court abused its discretion in not setting aside the default judgment. *Id.* at 794.

In turn, the trial court here cited *Heintz Electric* in making its good cause finding after hearing the evidence:

The—the initial failure to recognize the new lawsuit, that comes out of the Heintz case, too, and, you know, I can understand that from just a common sense point of view.

We cannot say the trial court abused its discretion on Point I.

### Point II—Reasonable Time/Point III—Undue Prejudice

■ While the motion was well within the one-year limit, Point II claims it was not "within a reasonable time" if Respondent learned of the judgment in mid-March but filed no motion until August 1. The trial court apparently credited Respondent's explanation that he lacked funds to hire counsel in mid-March.

Our courts have deemed periods up to 362 days a "reasonable time." *See Hopkins v. Mills–Kluttz,* 77 S.W.3d at 626, wherein the court further observed:

In determining reasonableness, we look at the underlying circumstances surrounding the delay. We consider whether the delay resulted in substantial harm to plaintiff and whether anything happened during the period of the delay that would adversely affect plaintiff's ability to pursue her cause of action on the merits.

*Hopkins* and other cases[2] thus treat Appellant's Point III prejudice argument not as a separate issue, but as part of the reasonable time analysis.

We need not decide if there is any meaningful difference between the prejudice analyses represented by *Hopkins* on one hand and *Marriage of Balough* on the other. We consider Points II and III together because Point II alleges no prejudice, and appellate review is for prejudice, not mere error. *In re Care & Treatment of Murrell v. State,* 215 S.W.3d 96, 109–10 (Mo. banc 2007). The Point III argument claims Appellant "will be substantially harmed by the delay resulting from the default judgment in this case being set aside—it will lose its judgment lien and any chance of collecting the judgment." Yet for all practical purposes, Appellant suffered that "harm" from the filing, rather than the timing, of Respondent's successful motion. Any judgment lien would be similarly lost if Respondent's successful motion was filed January 31, 2006, the day after the house sale closing and just seven days after the default judgment.

The trial court specifically considered Appellant's prejudice argument at the hearing to set aside, expressing some doubt whether Appellant could net a judgment for $200,000—or perhaps any amount—in a trial on the merits. Again, we cannot say the trial court abused its discretion in reaching its conclusions challenged in Points II and III.

### *Conclusion*

We affirm the judgment.

PARRISH, P.J., and BATES, J., concur.

---

2. Among such cases, recent ones include *Nguyen v. Wang,* 182 S.W.3d 688, 691 (Mo.App. 2006), and *Lunde v. Scardacci,* 175 S.W.3d 676, 678 n. 3 (Mo.App.2005).