Sharon **NERVIG** and Stephen Nervig,
Plaintiffs–Respondents,

v.

Cody **WORKMAN**, Defendant,

**Progressive Direct Insurance Company,**
Intervenor–Appellant.

No. SD 28848.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 6, 2009.

Petition for Rehearing or Transfer Denied
March 2, 2009.

Nikki Cannezzaro, Kansas City, MO, for Appellant.

James E. Corbett, Jr., Springfield, MO, for Respondent.

JEFFREY W. BATES, Judge.

Progressive Direct Insurance Company (Progressive) filed a Rule 74.05(d) motion to set aside a default judgment that was entered in favor of plaintiffs Sharon and Stephen Nervig and against defendant Cody Workman (Workman).[1] The trial court denied relief, and this appeal followed.

An appellate court reviews the ruling on a motion to set aside a default judgment for abuse of discretion. *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 687–88 (Mo. banc 2007). This Court will not find an abuse of discretion unless the record convincingly so demonstrates. *Heritage Warranty Ins., RRG, Inc. v. Swiney,*

---

1. All references to rules are to Missouri Court Rules (2008).

244 S.W.3d 290, 291 (Mo.App.2008); *Heintz Elec. Co. v. Tri Lakes Interiors, Inc.*, 185 S.W.3d 787, 791 (Mo.App.2006). Judicial discretion is abused only when that ruling was clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State ex rel. Wyeth v. Grady*, 262 S.W.3d 216, 219 (Mo. banc 2008). If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred. *Heritage Warranty Ins.*, 244 S.W.3d at 291–92.

This case arose out of an automobile collision that occurred on August 2, 2005. Sharon was driving west on U.S. Highway 60 when her vehicle was struck in the rear by Workman's vehicle.[2] On November 30, 2005, the Nervigs filed a petition against Workman in the Circuit Court of Greene County, Missouri. Count I asserted Sharon's claim for personal injuries. She alleged that the aforementioned collision had resulted from Workman's negligence in various respects, including the operation of his vehicle under the influence of alcohol. Count I further alleged that Sharon sustained serious and permanent injuries to her neck and back in the collision. Count II asserted Stephen's derivative claim for loss of consortium. Workman was personally served on February 8, 2006. He did not file an answer or otherwise defend against the Nervigs' lawsuit.

At the time the collision occurred, Workman was uninsured. Progressive insured the Nervigs, and their auto policy included uninsured motorist (UM) coverage. The Nervigs filed a claim for UM benefits after the collision. On March 9, 2006, this claim was assigned by Progressive to its employee, Barry Byrne (Byrne). Between March 16 and May 30, Byrne contacted the Nervigs' attorney on three occasions. Each time, Byrne was told that a settlement demand package was being prepared. On June 9, 2006, Byrne was informed that the Nervigs had filed a lawsuit against Workman. Three weeks later, Byrne received Sharon's medical records and bills. On September 15, 2006, the Nervigs' counsel sent Byrne a letter advising him of the date when Workman had been personally served.

On October 4, 2006, the Nervigs' counsel sent Byrne another letter informing him of the style of the case against Workman, the name of the court in which the lawsuit had been filed, the case number, and the date Workman had been personally served. The letter specifically informed Byrne that: (1) Workman had never filed an answer or otherwise defended himself in the case; (2) no attorney had filed an entry of appearance for Workman; and (3) the Nervigs were planning to take a default judgment against Workman. Byrne received this letter on October 6, 2006. He discussed the letter with his supervisor, Matthew Ogle (Ogle). Neither was an attorney. Ogle told Byrne that the lawsuit against Workman did not affect Progressive because the insurer was not a party to the lawsuit and did not insure Workman. Progressive later conceded its employees' understanding of the effect of the lawsuit on Progressive was wrong.

On October 31, 2006, the Nervigs filed a motion requesting the entry of a default judgment against Workman. An evidentiary hearing for that purpose was conducted on November 15, 2006. The Nervigs had not specifically informed Progressive of the hearing date, but

---

**2.** Because the Nervigs' surname is the same, we will refer to Sharon and Stephen by their given names when referring to them individually. We do so for purposes of clarity and intend no disrespect.

that information was readily available by simply consulting the docket sheet. Workman did not attend. After hearing testimony from Sharon, the trial court entered a default judgment against Workman and in favor of the Nervigs. Sharon was awarded $300,000 for her personal injuries, and Stephen was awarded $10,000 for loss of consortium.

On November 27, 2006, the Nervigs' counsel informed Byrne that a default judgment had been taken against Workman. On December 19, 2006, the Nervigs' counsel sent Byrne a letter enclosing a copy of the default judgment and requesting the issuance of a check for $150,000 in UM benefits to the Nervigs.

On February 5, 2007, Progressive filed a motion to intervene and set aside the default judgment. Citing settled principles of Missouri case law, Progressive contended that it was entitled to intervene as a matter of right because it would be estopped from relitigating the issues of liability and damages if it failed to do so. Progressive also alleged that, pursuant to Rule 74.05(d), the default judgment against Workman should be set aside because Progressive could establish good cause to do so, and there existed a meritorious defense to the Nervigs' claims. To support the motion to set aside the judgment, Progressive attached affidavits from Byrne and Ogle. According to these affidavits, Byrne and Ogle believed that Progressive would not be affected by a default judgment against Workman because he was not insured by Progressive, and it was not a named party to the lawsuit.

In May 2007, the trial court sustained Progressive's motion to intervene. In June 2007, Progressive filed suggestions in which it argued that the following facts established good cause to set aside the default judgment against Workman:

1. Progressive worked with the Nervigs' counsel to evaluate the claim.

2. The Nervigs did not promptly inform Progressive that suit had been filed against Workman, service had been obtained, and he was in default.

3. The Nervigs did not alert Progressive that it could potentially be responsible for the default judgment.

4. Progressive's employees believed intervention was unnecessary because the insurer was not a party to the suit and did not insure Workman.

5. Progressive's employees are not lawyers and were under the mistaken belief that the lawsuit would not affect Progressive.

6. Progressive's conduct was not designed to impede the judicial process.

7. Progressive filed its motion to intervene and set aside the default judgment as soon as it was put on notice of its potential exposure.

In November 2007, the trial court entered a judgment denying Progressive's motion to set aside the default judgment against Workman. This appeal followed.

*Motion to Dismiss Appeal*

As noted above, the default judgment against Workman was entered on November 15, 2006. Because no post-trial motions were filed, that judgment became final 30 days later. *See* Rule 81.05(a)(1). Progressive's motions to intervene and set the judgment aside were not filed until February 5, 2007.

After Progressive's notice of appeal was filed, the Nervigs filed a motion to dismiss the appeal for lack of jurisdiction. The Nervigs argue that the finality of the default judgment rendered Progressive's motion to intervene untimely and deprived the trial court of jurisdiction to permit

intervention or rule on the motion to set the default judgment aside. According to the Nervigs, the lack of jurisdiction below also precludes appellate review.[3]

██ The Nervigs first argue Progressive was not entitled to intervene as a matter of right because it was not aggrieved by the judgment. This Court disagrees. In relevant part, Rule 52.12(a)(2) authorizes intervention as a matter of right "when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." It is well-settled law in Missouri that, if a UM insurer has adequate notice of the claim and an opportunity to intervene in the action against the uninsured motorist, the insurer is estopped from relitigating the issues of liability and damages once they have been decided in the underlying lawsuit. See Baker v. Lee, 252 S.W.3d 267, 269–70 (Mo.App.2008). For this reason, a UM insurer has an absolute right to intervene in an action in which its policyholder is alleged to have been injured by an uninsured motorist's negligence. See, e.g., Oates v. Safeco Ins. Co. of America, 583 S.W.2d 713, 719–20 (Mo. banc 1979); State ex rel. Farmers Ins. Co., Inc. v. Murphy, 518 S.W.2d 655, 663 (Mo. banc 1975); Wells v. Hartford Accident & Indemnity Co., 459 S.W.2d 253, 259 (Mo. banc 1970); Baker, 252

S.W.3d at 269–70; Frost v. White, 778 S.W.2d 670, 672 (Mo.App.1989); Beard v. Jackson, 502 S.W.2d 416, 418–19 (Mo.App. 1973); State ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, 364 S.W.2d 343, 348–49 (Mo.App.1963). Progressive was bound by the trial court's determination of liability and damages because the insurer had adequate notice of the pending action against Workman, an absolute right to intervene upon request and ample opportunity to do so prior to the entry of the default judgment. Therefore, Progressive is aggrieved by the judgment because that adjudication directly affects the insurer's pecuniary interest. See Duncan v. Duncan, 751 S.W.2d 763, 766 (Mo.App.1988).[4]

██ Next, the Nervigs argue that Progressive filed its motion to intervene and set aside the default judgment too late because there was no action into which the insurer could intervene once the default judgment became final. This Court disagrees. Upon proper motion, a default judgment may be set aside "within a reasonable time not to exceed one year after the entry of the default judgment." Rule 74.05(d). In addition, this subpart of the rule explicitly provides that a Rule 74.05(d) motion is an independent action. Id.[5] The trial court's ruling on the motion is treated as an independent judgment. Brungard v. Risky's Inc., 240 S.W.3d 685, 687 (Mo. banc 2007).

██ As noted above, many Missouri appellate opinions acknowledge the absolute right of a UM insurer to intervene in

---

3. Regardless of whether the trial court lacked the authority to rule on Progressive's motion, this Court has jurisdiction over the appeal. See In re Estate of Shaw, 256 S.W.3d 72, 77 (Mo. banc 2008).

4. Frankly, the Nervigs' contrary argument is quite puzzling. If this Court dismissed Progressive's appeal on the ground that the in-

surer was not bound by the trial court's determination of liability and damages, the default judgment against Workman would not be of the slightest benefit to the Nervigs.

5. This particular provision of the rule became effective on January 1, 2007, before Progressive filed its Rule 74.05(d) motion.

a lawsuit brought by its policyholder against an uninsured motorist. Rule 52.12(a), however, requires such an application to be timely. Construing Rules 52.12(a) and 74.05(d) together in a harmonious fashion, this Court holds that: (1) Progressive had an absolute right to intervene in the Nervigs' lawsuit against Workman because the insurer was bound by the trial court's determination of liability and damages; (2) the insurer's motion to intervene was timely because it was filed while the trial court still had the authority to hear Progressive's motion to set the default judgment aside; and (3) that latter motion created a new and independent action for the trial court to adjudicate pursuant to the standards set forth in Rule 74.05(d). The Nervigs' motion to dismiss Progressive's appeal is denied.

### Progressive's Appeal

Progressive presents one point on appeal. It contends the trial court abused its discretion by denying the motion to set aside the default judgment against Workman. A trial court is authorized to set aside a default judgment if: (1) the motion is timely filed; (2) it states facts constituting a meritorious defense; and (3) the movant shows good cause to set the judgment aside. *J.E. Scheidegger Co., Inc. v. Manon*, 149 S.W.3d 499, 502 (Mo.App. 2004); Rule 74.05(d). Progressive's motion was filed approximately two and one-half months after the insurer was notified of the default judgment. The motion was timely. *See Baker v. Lee*, 252 S.W.3d 267, 269–70 (Mo.App.2008) (holding that a UM insurer acted within a reasonable time by filing a motion to set aside a default judgment four and one-half months after it received notice of the judgment's entry). The Nervigs' concede that Progressive's motion stated facts constituting a meritorious defense. Therefore, the dispositive issue is whether the trial court abused its

discretion by ruling that Progressive failed to show good cause for setting the default judgment aside.

"The party moving to set aside the default judgment has the burden to prove good cause for setting aside the judgment." *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 688 (Mo. banc 2007). If good cause is not established, there is no abuse of discretion in refusing to grant relief pursuant to Rule 74.05(d). *Mullins v. Mullins*, 91 S.W.3d 667, 672 (Mo.App. 2002); *In re Marriage of Pierce*, 867 S.W.2d 237, 238 (Mo.App.1993). Good cause includes "a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." *Pierce*, 867 S.W.2d at 238; Rule 74.05(d). Thus, reckless conduct does not satisfy the good cause requirement of Rule 74.05(d). *Crain v. Crain*, 19 S.W.3d 170, 174 (Mo.App. 2000). "Recklessness involves a deliberate choice to risk the possibility of a default judgment." *Wilderman v. Drawbond*, 267 S.W.3d 772, 775 (Mo.App.2008); *see Central America Health Sciences University v. Norouzian*, 236 S.W.3d 69, 78 (Mo.App. 2007) (defining recklessness as the conscious choice of a course of action with knowledge of the serious danger that a default judgment could result). That is precisely what happened here. By June 9, 2006, Byrne knew the Nervigs had filed suit against Workman. By September 15, 2006, Byrne knew that Workman had been personally served seven months earlier. By October 6, 2006, Byrne was specifically informed that Workman was not defending himself and that the Nervigs intended to take a default judgment against him. After Byrne discussed the situation with Ogle, they decided to take no action whatsoever with respect to the Nervigs' lawsuit. Thus, Progressive's employees made a deliberate choice to allow a default judgment to be taken against Workman.

Progressive argues, however, that the trial court abused its discretion in not setting that default judgment aside because the affidavits filed by Ogle and Byrne show that they simply made a mistake. The trial court was not persuaded by that argument, and this Court finds no abuse of discretion in that regard. The issue of whether Progressive would be affected by the Nervigs' lawsuit against Workman if the insurer failed to intervene was a legal question. Because neither Byrne nor Ogle were attorneys, they were not competent to make that determination. Nevertheless, after merely discussing the matter between themselves, the two men decided that no action to avert the impending default judgment against Workman was necessary. There is nothing in either man's affidavit which explains how he arrived at his totally errant conclusion that the lawsuit against Workman did not affect Progressive. Indeed, that decision was contrary to over 40 years of settled Missouri law.

Progressive and its employees are required to meet a professional standard of care in handling claims. *Richey v. Philipp*, 259 S.W.3d 1, 17 (Mo.App.2008); *Jones v. Kennedy*, 108 S.W.3d 203, 207 (Mo.App.2003). Thus, Byrne and Ogle were required to exercise the degree of care, skill and diligence that persons in their profession would ordinarily exercise under the same or similar circumstances. *Jones*, 108 S.W.3d at 207. Any dereliction on their part in carrying out their duties as employees is attributable to Progressive.[6] *See McElroy v. Eagle Star Group, Inc.*, 156 S.W.3d 392, 404 n. 8 (Mo.App.2005), *abrogated on other grounds by Pyle v. FirstLine Transp. Sec., Inc.*, 230 S.W.3d 52, 56–57 (Mo.App.2007); *Barker v.*

*Friendly Am., Inc.*, 606 S.W.2d 457, 460 (Mo.App.1980). An insurance company's honest error in judgment about the law is neither reasonable nor made in good faith when the issue has been definitely settled. *J.R. Meade & Co. v. Barrett & Co.*, 453 S.W.2d 632, 635 (Mo.App.1970). Under such circumstances, the insurer is charged with knowledge of the law that affects its liability. *Willis v. American Nat'l Life Ins. Co.*, 287 S.W.2d 98, 107 (Mo.App. 1956).

In the case at bar, Byrne and Ogle knew that the Nervigs intended to obtain a default judgment against Workman. Whether Progressive would be bound by that judgment had been definitely settled against the insurer for decades. Thus, Progressive's failure to take any action to avoid the default judgment was neither reasonable nor in good faith. The trial court properly concluded that the conduct of Byrne and Ogle, which was chargeable to Progressive, was designed to recklessly impede the judicial process. *See, e.g., McElroy*, 156 S.W.3d at 404–06 (corporation's agent acted recklessly by unreasonably concluding that an insurer would assume the corporation's defense when the agent knew that coverage was disputed). Progressive's conscious choice to ignore the Nervigs' lawsuit amounted to reckless behavior, which does not meet the good cause standard. *See* Rule 74.05(d); *Gering v. Walcott*, 975 S.W.2d 496, 499–500 (Mo.App.1998).

Progressive's other arguments require scant discussion. First, Progressive argues that it was the Nervigs' responsibility to alert their own insurer that it could potentially be responsible for any default judgment that was obtained against Work-

---

6. To hold otherwise would give Progressive "an incentive to delegate responsibility to its least informed agents in order to avoid liabili- ty." *Wandersee v. BP Products North America, Inc.*, 263 S.W.3d 623, 629–30 (Mo. banc 2008).

man. This Court categorically rejects that assertion. Progressive was charged with knowledge of Missouri law affecting its liability. *J.R. Meade & Co.*, 453 S.W.2d at 635; *Willis*, 287 S.W.2d at 107. It needed no further information on that subject from its own insureds. Progressive's final argument is even more meritless. The insurer argues that the Nervigs should have notified Progressive about the date when the evidentiary hearing on the default judgment was to be held. According to the affidavits of Byrne and Ogle, however, neither man believed that the underlying lawsuit had any effect on Progressive. There is no basis whatsoever to conclude that providing Byrne or Ogle with the hearing date would have prompted any different action by Progressive.

In conclusion, the trial court's decision to deny Progressive's motion to set aside the default judgment against Workman was not clearly against the logic of the circumstances then before the court and was not so arbitrary and unreasonable as to shock this Court's sense of justice and indicate a lack of careful consideration. Accordingly, the trial court's ruling was not an abuse of discretion and is affirmed.

BARNEY, J., and SCOTT, P.J., Concur.